**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. ROCKTON & RION R. R.**

No. 339.

District Court, W. D. South Carolina, Rock Hill Division.

Feb. 29, 1944.

George A. Downing, Regional Atty., Department of Labor, and Dakyns B. Stover, Associate Atty., Department of Labor, both of Atlanta, Ga. (Douglas B. Maggs, Sol., Archibald Cox, Associate Sol., and Hugh McCloskey, Supervising Atty., all of Washington, D. C., and Vincent A. Burns, of Boston, Mass., Atty., on the brief), for plaintiff.

Hemphill & Hemphill, of Chester, S. C., and Julian L. Johnson, of Columbia, S. C., for defendant.

WYCHE, District Judge.

This is a suit to enjoin the defendant from violating provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as to the payment of minimum wages and overtime compensation; and the maintenance of proper records. Defendant denies the material allegations of the complaint, and as to the charge of overtime violations, asserts that it has no obligation to pay such because of an exemption provided in section 13(b) (2), 29 U.S.C.A. § 213(b), under which section overtime need not be paid to "any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act." 49 U.S.C.A. §§ 1–27.

A summary of the facts is as follows:

The defendant operates a short line railroad in Fairfield County, South Carolina,

between the points of Anderson's Quarry and Rockton, a distance of approximately twelve miles, and connects with the Southern Railway at Rockton by means of a house-track of the Southern Railway. It owns four locomotive engines, two cranes, two box cars, ten or twelve flat cars, eighteen or twenty dump cars, twelve yard and eight yard dump cars, and two coal cars; and it procures from the Southern Railway other cars as needed.

The railroad which the defendant operates was built in 1907 by the Winnsboro Granite Corporation. It was owned and operated solely as a private railroad, as an integral part of the Winnsboro Granite Corporation, and as an adjunct to its quarrying and granite producing operations. The Winnsboro Granite Corporation now leases its quarry, machinery and equipment to the Quarry Company, a partnership now located on the railroad of the defendant. Other quarry and granite companies located along the line of defendant's railroad are Phillips Granite Company, Brooks Granite Company, and the Rion Crush Stone Company.

On February 8, 1932, the defendant was incorporated under the laws of South Carolina for the purpose of purchasing the private railroad owned and operated by the Winnsboro Granite Corporation. It subsequently acquired the private railroad and equipment of the granite corporation at a price of $10,000, the entire purchase price being represented by an issue of bonds to the granite corporation, and twenty-five shares of capital stock of the par value of $100 each were delivered to the granite corporation to assure the purchase agreement. The stockholders of the railroad corporation were at the time of its organization connected with granite companies along the line.

On April 15, 1932, the defendant applied to the Interstate Commerce Commission under Section 1(18) of the Interstate Commerce Act, 49 U.S.C.A. § 1(18), for authority to acquire and operate as a common carrier in interstate commerce that portion of the railroad extending from Rockton to Rion. The Commission denied the application, finding that public convenience and necessity were not shown to require the acquisition and operation by the defendant of the line from Rockton to Rion. 189 I.C.C. 545. The Commission found as a fact that under the plan presented, the granite companies were merely

attempting to change the status of the line from a plant facility to a common carrier. The Commission rejected the applicant's contention that it was not industrially controlled, finding as a fact that the same individuals who would own all of the applicant's capital stock also owned an interest in the stone companies which proposed to use the line. Despite the denial of its certificate, the defendant completed its incorporation, acquired the road, and henceforth proceeded to operate it under the authority of its State charter as an intrastate common carrier, hauling all freight tendered it for transportation by the public, charging the rates prescribed by the South Carolina Public Service Commission.

In 1939 certain local competitors of the granite companies which use the defendant's railroad instituted proceedings before the Interstate Commerce Commission against the defendant, the Southern Railroad, and other connecting lines (Weston & Brooker Co. et al. v. Southern Railroad Co., 1940, 243 I.C.C. 105), alleging that the Rockton & Rion Railroad was "unlawfully engaged in interstate commerce"; that by reason of divisions accorded the Rockton & Rion Railroad by connecting carriers on intrastate traffic, shippers on the Rockton & Rion line were unduly preferred to the prejudice of the complainants; and that the rates from and to points on the Rockton & Rion line were in violation of Sections 1, 3, 6 and 13 of the Interstate Commerce Act, 49 U.S.C.A. §§ 1, 3, 6 and 13. The Commission was asked to prescribe future rates and to require the defendant to cease and desist from interstate transportation. The contention was that the Rockton & Rion Railroad, by the method of billing and interchanging freight, had nullified the Commission's earlier decision refusing to grant the railroad a certificate of convenience and necessity to acquire and operate the line as an interstate common carrier.

The Commission, after a formal hearing, found that the operation of the Rockton & Rion Railroad, so far as interstate commerce was concerned, was that of a plant facility of the shippers on its line. It dismissed the complaint, finding that the Rockton & Rion Railroad was not shown "to be engaged in unauthorized interstate common carrier operation", and that its participation in joint rates and divisions on intrastate shipments as authorized by the South Carolina Public Service Com-

mission had not been shown to be in violation of Section 13 of the Interstate Commerce Act, 49 U.S.C.A. § 13.

Defendant is engaged in transporting over its line a large volume of shipments destined for points outside of South Carolina, practically all such shipments being made by granite companies located on defendant's line. During the period covered by the complaint, such shipments have averaged in number in excess of two hundred a month. Although the less than carload shipments have predominated, yet measured in terms of carload shipments, the total monthly average has ranged from approximately thirty-five to approximately one hundred carloads. During the same period of time the intrastate shipments (all carload lots) have averaged approximately three hundred and fifty a month. On a weight and tonnage basis, defendant's superintendent testified that the interstate shipments accounted for only about ten per cent. of the total traffic. When measured either on the basis of the number of shipments or of tonnage hauled, the defendant is substantially engaged in transporting goods destined to out-of-state points, since on either basis large volumes of goods transported by the defendant are ultimately carried to out-of-state points.

The defendant is also engaged in transporting over its line a substantial number of shipments which have originated at out-of-state points. All of such shipments are consigned to the granite companies located upon the defendant's line at Rion and at Anderson's Quarry. The defendant also frequently handles incoming express shipments as freight which have originated at out-of-state points. These also are all consigned to the granite companies.

The defendant maintains distinctions in its methods for the handling of interstate and intrastate shipments, particularly in shipping documents, billing methods, arrangements for maintaining and participating in joint rates, divisions of rates, etc.; the details of such methods are set forth in the Findings of Fact which have been duly filed.

The defendant's annual operating revenues have never exceeded $100,000.

While the defendant owns no stock in the quarry and granite companies along its line, and at this time such quarry and granite companies own no stock in the defendant corporation, there is a community of interest, affiliation between, and inter-relationship among, the defendant railroad and the quarry and granite company shippers located along defendant's railroad, brought about by reason of overlapping ownership and interlocking management and operations, interwoven with some common stockholders, common directors, common officers and common employees and agents, and by the devotion of a substantial part of defendant's operations to the performance gratis of considerable hauling and switching services for some of the quarry and granite company shippers along its line.

The defendant employs about thirty-two employees in the operation of its railroad, including engineers, firemen, flagmen, section hands, construction crews and clerical employees.

From November 2, 1939, to February 12, 1942, the defendant did not pay to some of its employees the minimum wages and overtime pay prescribed by the provisions of the Fair Labor Standards Act, and during said time failed to keep records of the hours worked each day in each week as to some of its employees, and of the hourly rate at which some of its employees were employed; and from February 12, 1942, continuously to the date of trial, the defendant employed some of its employees for work weeks in excess of the hours provided in the Act, and failed to compensate said employees for such overtime work at rates of not less than one and one-half times their regular rates of pay.

These facts present the following questions, (1) are the defendant's employees engaged in interstate commerce, or, (2) in the production of goods for interstate commerce, and, (3) if they are engaged in either, whether the exemption from the requirement to pay overtime applies. 29 U.S.C.A. §§ 206(a), 213(b) (2).

With reference to whether the employees of the defendant are engaged in interstate commerce, it clearly appears that in their regular course of duty they normally handle and transport a substantial amount of goods which are shipped from points along the Rockton & Rion Railroad to places in other States, and from out-of-state sources to points along defendant's line. Commerce is intercourse among the several States and such activities of defendant's employees have always been considered examples of interstate commerce. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23. Accordingly, I must conclude

that defendant's employees are engaged in interstate commerce within the meaning of the Act. Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165, certiorari denied 317 U. S. 634, 63 S.Ct. 29, 87 L.Ed. 511; Eddings v. Southern Dairies, D.C.W.D.S.C., 42 F. Supp. 664.

█ What I have stated to be the normal duties of defendant's employees likewise requires me to decide that they are engaged in the production of goods for interstate commerce. The terms "handling" and "transporting" are expressly included within the statutory definition of the word "produced". Section 3(j) of the Act, 29 U.S.C.A. § 203(j). Several recent decisions of the Circuit Court of Appeals for the Fourth Circuit interpreting the Act amply support this conclusion. See Hamlet Ice Co. v. Fleming, supra; Bracey v. Luray, 4 Cir., 138 F.2d 8; Slover v. Wathen, 4 Cir., 140 F.2d 258. Certainly the work performed by these employees is as much a "process or occupation necessary to the production" of granite and stone for interstate commerce, as was that of the elevator operator, and the other maintenance employees, in Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; or that of the rotary drilling crew in Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; or that of the watchman in Walton v. Southern Package Corp., 64 S.Ct. 320.

Turning then to the third question, the defendant's claim that it is exempt from the obligation to pay overtime, it is necessary to consider whether the claim has been precluded by a previous ruling of the Interstate Commerce Commission as to the character of the service supplied by the Rockton & Rion Railroad; if not, whether in any event the exemption afforded employees of an employer "subject to the provisions of Part I of the Interstate Commerce Act" may apply to services of a character performed by defendant; and, if this latter question be answered affirmatively, whether the exemption may be allowed on the record before the court.

Is the claim of exemption precluded as a result of a decision by the Interstate Commerce Commission affecting the defendant's railroad? It appears that in April, 1932, the Rockton & Rion Railroad applied to the Interstate Commerce Commission for a certificate of convenience and necessity to operate its line of railroad as an interstate common carrier. The application was denied, the Commission finding that no showing of such public convenience and necessity had been made as would warrant granting the certificate. 189 I.C.C. 545. Shortly thereafter, defendant obtained approval of the Public Service Commission of the State of South Carolina to operate its railroad as an intrastate common carrier, proceeded to operate under such authority, and was so operating at the time this case was tried.

It further appears that in 1939, certain competitors of the granite companies which had been using defendant's line instituted proceedings before the Interstate Commerce Commission against the Southern Railroad, the Atlantic Coast Line Railway, and the Rockton & Rion Railroad, asserting (1) that the Rockton & Rion Railroad was "unlawfully engaged in interstate commerce" with respect to traffic between points on its line wholly within the State of South Carolina and points in other States; (2) that by reason of divisions accorded the Rockton & Rion Railroad by connecting carriers on intrastate traffic, shippers on the Rockton & Rion line were unduly preferred to the prejudice of complainants; and (3) that the rates from and to points on the Rockton & Rion line were in violation of Sections 1, 3, 6 and 13 of the Interstate Commerce Act and of Section 205, paragraph 2 of the Emergency Transportation Act of 1933, 49 U.S.C.A. § 15a (2). The complainants requested the Interstate Commerce Commission to prescribe lawful rates for the future, and to require defendant to cease and desist from transporting commodities in interstate commerce from and to points on the Rockton & Rion line. Weston & Brooker Co. et al. v. Southern Railroad Co. et al., 1940, 243 I.C.C. 105.

██ Only the first allegation, and the Commission's decision in respect to it, has relevance to the claimed exemption in this case. After holding hearings and receiving evidence from all parties concerned, the Interstate Commerce Commission rejected the contention that the Rockton & Rion Railroad was "unlawfully engaged in interstate commerce." The Commission recognized that the Railroad was engaged in transporting "interstate shipments", and that it acted in the capacity of a common carrier. The majority of the Commission nevertheless concluded that, in respect to the interstate features of its business, defendant operated in the capacity of a plant

facility of the shippers on its line. Viewing the service thus supplied not to be a service of "transportation" within the meaning of Section 1(3) of the Interstate Commerce Act, the Commission concluded that defendant was not subject to regulation under the Act. This decision was one that the Interstate Commerce Commission was peculiarly empowered to make; and having been based not only upon the evidence presented at the hearing, but upon an experience obtained from repeated dealing with similar questions, such decision is entitled to be given effect here. United States v. American Sheet & Tin Plate Co., 301 U.S. 402, 408, 57 S.Ct. 804, 81 L.Ed. 1186; Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; Swift & Co. v. United States, 316 U.S. 216, 62 S.Ct. 948, 8 L.Ed. 1391; Aron v. Pennsylvania R. Co., 2 Cir., 80 F.2d 100, 103 A.L.R. 1367; Louisville Cement Co. v. United States, D.C.D.Ky., 19 F.Supp. 910. It is not within the province of the court "to substitute its judgment for that of the Commission upon matters of fact within the Commission's province." Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 234 U.S. 294, 34 S.Ct. 814, 820, 58 L.Ed. 1319. Indeed, in the face of this decision by the Interstate Commerce Commission, it would do violence to the legislative purpose in granting the exemption to permit defendant its advantage in the instant case. The language of Section 13(b) (2), as well as its legislative history, shows that the exemption was inserted to avoid duplication of Federal regulatory authority over the hours of employment of railroad workers. Southland Gasoline Co. v. Bayley, 319 U.S. 44, 48, 49, 63 S.Ct. 917, 87 L.Ed. 1244. Certainly it was not intended by this exemption to exclude a carrier not subject to regulation by the Interstate Commerce Commission.

 Nor is there any inconsistency, as defendant has urged, in holding these employees to be engaged in interstate commerce and in the production of goods for such commerce, and yet to deny the applicability of the exemption. Engagement in activities which subject an employer to the standards prescribed by the Fair Labor Standards Act is not automatically the equivalent of supplying, as an interstate common carrier, a service of a character to fall within the term "transportation", as used in Section 1(3) of the Interstate Commerce Act. Cf. Hamlet Ice Co. v.

Fleming, 4 Cir., 127 F.2d 165, certiorari denied 317 U.S. 634, 63 S.Ct. 29, 87 L.Ed. 511. "Commerce" under the Fair Labor Standards Act is a broad term, of which "transportation" is only a part. The Act defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." Section 3(b) of the Act, 29 U.S.C.A. § 203 (b). Engagement in any one of these activities is sufficient to subject an employer to regulation under this Act. Mere engagement in commerce, however, does not render every carrier subject to regulation under Part I of the Interstate Commerce Act; the character of the carrier, as common or private, and the character of the service supplied, as a service of "transportation" within Section 1(3), are also to be considered. The construction of each statute presents a "unique problem in which words derive vitality from the aim and nature of the specific legislation." Federal Trade Comm. v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 582, 85 L.Ed. 881.

Defendant contends, however, that the Commission's decision has been rendered inoperative by changed circumstances in the degree of inter-relationship and control between the railroad and certain shippers on its line, which have occurred subsequent to the decision in the Weston & Brooker proceedings. Careful analysis of the proceedings before the Interstate Commerce Commission, however, indicates that only one change merits note, namely, while at the time of the Weston & Brooker decision the granite producing interests appeared to control the railroad's operation, such no longer is the case.

 While, perhaps, it would be a sufficient answer to this contention to point to the language in the Commission's findings that "whether those shippers owned the Rockton & Rion, or merely use it, is not important," it is not necessary upon the record before me to restrict this decision within such narrow compass. Even if not bound by the determination of the Interstate Commerce Commission, it is my opinion that defendant's operations, in respect to interstate commerce, are those of a plant facility, and as such, are not services of "transportation". United States v. American Sheet & Tin Plate Co., 301 U.S. 402, 57 S.Ct. 804, 81 L.Ed. 1186. The evidence presented in the instant case has served only to corroborate, not to detract

348

from, the Commission's conclusion. I need hardly mention, too, that this evidence leaves little scope for the operation of an exemption whose applicability is never presumed, but must be established by an affirmative showing. United States v. Dickson, 15 Pet. 141, 165, 10 L.Ed. 689; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11.

 While I have decided that defendant's employees are engaged in interstate commerce and in the production of goods for such commerce, and not exempt, the question still remains whether an injunction should issue. Upon the view I have taken of the case, it is unquestioned that violations occurred over an extended period, and it was their existence, and the firm contention between the parties, which occasioned the Administrator's resort to these proceedings for injunctive restraint. Accordingly, it follows that an injunction should issue. Walling v. Haile Gold Mines, 4 Cir., 136 F.2d 102; Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318; Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395.

Counsel may submit appropriate order.