WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. MID-CONTINENT PIPE LINE CO.

No. 2859.

Circuit Court of Appeals, Tenth Circuit.

June 12, 1944.

Rehearing Denied July 17, 1944.

Bessie Margolin, Asst. Sol., of Washington, D. C. (Douglas B. Maggs, Sol., and Archibald Cox, Associate Sol., both of Washington, D. C., Llewellyn B. Duke, Regional Atty., of Dallas, Tex., and Faye Blackburn, Atty., United States Department of Labor, of Washington, D. C., on the brief), for appellant.

J. P. Greve, of Tulsa, Okl. (R. H. Wills, J. H. Crocker, Ben Hatcher, and J. H. Woodward, all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The Wage and Hour Administrator brought this suit to enjoin the appellee, Mid-Continent Pipe Line Company, from violating Section 15(a) (1) (2) (5) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (1, 2, 5). The appellee denied coverage under the Act, alleging that the employees involved were not engaged in commerce or in the production of goods for commerce, and that it was a service establishment under Section 13(a) (2) of the Act, hence exempt from its coverage. Issues were joined and at the conclusion of the evidence, which is not materially in dispute, the trial court made findings of fact and conclusions of law, but dismissed the complaint without adjudicating the question of coverage, and without exercis-

ing its discretion whether an injunction authorized by Section 17 should issue. The Administrator has appealed contending that the issues raised a justiciable controversy which the trial court was required to decide. Moreover, it is insisted that under the facts, the court should have sustained coverage in respect to certain of its employees and issued the injunction.

According to the facts as found by the trial court, the Mid-Continent Pipe Line Company owns and operates a pipe line system which traverses fourteen counties in the State of Oklahoma. It purchases crude oil from producing wells in Oklahoma oil fields, most of which is transported and sold to the Mid-Continent Refinery at Tulsa, Oklahoma, where it is refined and manufactured into petroleum products, and thereafter sold and shipped in interstate commerce. The pipe line system does not follow any road or highway, and is accessible only over dirt roads, fields and pastures. The maintenance department of the company employs approximately forty-two employees—thirty-six laborers and six welders, which are divided into crews stationed at various points along the line where they headquarter and work out of company warehouses. The employees report each morning for the day's work at the respective company warehouses, and from there they travel in a company truck, which also carries equipment used by the maintenance department, to the points along the line where the work or repairs is to be performed—sometimes a distance of forty-five to seventy-five miles.

Under the contract of employment, all of the employees in the maintenance department were required to report to the respective warehouses where the workday commenced. If the day's work was to be performed on the pipe line, they were paid for the time consumed in traveling to the place of performance, but the workday ended at the place of work, and they were not compensated for the return transportation time. Thirty-six laborers and one welder were free to return to their homes or the warehouses either on the company trucks or by any other means they chose. It was however a part of the duties of five welders to drive company trucks containing men and equipment from the warehouses to the place of work, and when the workday was finished, return the trucks and equipment to the warehouses where they were relieved of their duties. The return time averaged about one hour per day, for which they received no compensation.

Prior to April 1, 1942, the employer did not keep any records reflecting time consumed by any employees in traveling from the place where the work was performed to the respective homes or warehouses. However, since that time, it has kept records reflecting time thus consumed by the laborers, but did not keep any record of the transportation time of the welders for the return trip to the warehouses with trucks and equipment. The trial court was "unable to find that the defendant had wilfully and intentionally violated" the Act in any respect, or that it would do so in the future. It found that the failure to keep records of time consumed by the five welders in driving company trucks from the place where the day's work was performed to the warehouses, and to compensate them therefor, was predicated upon the contention of the employer that it was a service establishment within the meaning of Section 13 (a) (2), "which contention is not without merit." The court indicated its preference not to decide whether the employer was a service establishment, and offered to dismiss the complaint if the defendant would agree, without waiving its defense in the event of an appeal, to include the transportation time in the workweek of the five welders "until it is authoritatively determined that the said welders or comparable employees are not covered by or exempt from the coverage of the Act." The appellee so agreed and thereupon the trial court declined to adjudicate the question of coverage or whether an injunction should issue, and dismissed the action with prejudice.

█ █ The respective contentions of the parties presented an actual controversy which the trial court had the province and the inescapable duty to try and decide. It did not discharge that duty by securing an agreement from the employer that it would comply with the requirements of the Act until the question of coverage was elsewhere authoritatively determined, if, and only if, the Administrator did not seek to have the question determined here on appeal. Furthermore, the question did not abate or become moot merely because of this provisory compliance. Cf. Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395.

■ It is now admitted by appellee that all of the maintenance employees in question were engaged in the production of goods for commerce, and it is stated in its brief that it did not contend otherwise in the court below. Indeed, we held in Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, that men guarding the operations of this pipe line were engaged in preparation of goods for commerce, and the company did not at that time contend that it was a service establishment under Section 13(a) (2) of the Act. It performs no services or sells no goods to consumers, has no characteristics of a service establishment, and it has now abandoned this contention on appeal. Cf. Fleming v. A. B. Kirshbaum Co., 3 Cir., 124 F.2d 567, affirmed Arsenal Bldg. Corp. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236.

■ With respect to the thirty-six laborers and one welder who did not drive a truck, the trial court rightly held that since the day's work ended at the place of performance, they were not entitled to have the return time included in the workday or to be compensated therefor. Dollar v. Caddo River Lumber Co., D.C., 43 F.Supp. 822; Bulot v. Freeport Sulphur Co., D.C., 45 F.Supp. 380; Walling v. Peavy-Wilson Lbr. Co., D.C., 49 F.Supp. 846, 885. It is equally plain however, as the trial court indicated but did not hold, that since the five welders were required to drive the company trucks and equipment from the place where the work was performed to the warehouses before they were relieved of their duties, they were legally entitled to have this transportation time included in their statutory workweek, and to be compensated therefor in accordance with the applicable provisions of the Fair Labor Standards Act, regardless of any employment contract to the contrary. Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 5 Cir., 135 F.2d 320, affirmed 64 S.Ct. 698.

■ It follows therefore that the appellee has violated Section 15(a) (1) (2) (5) of the Fair Labor Standards Act with respect to the employment of the five welders, and since the Wage and Hour Administrator petitioned the trial court to re-strain such violations, it became the statutory duty of the trial court to decide whether in its discretion it would grant the relief prayed. 52 Stat. 1069, 29 U.S.C.A. § 217. Walling v. Shenandoah-Dives Mining Co., supra; Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587. The trial court has a wide range of discretion in determining whether an injunction will lie; the question is addressed to the equitable considerations of a chancellor with power "to do equity and to mould each decree to the necessity of each particular case". Hecht Co. v. Bowles, supra. But the power of discretion does not excuse its failure to act, and since the trial court refused to exercise its discretion whether injunctive relief should lie, we deem it proper to decide this issue upon the facts as presented by the trial court's findings.

■ The contention below that the employees were not engaged in the production of goods for commerce, or that they were employed in a service establishment within the meaning of Section 13(a) (2), if made in good faith, is utterly without merit as the appellee now concedes. Yet its manifestations of compliance are conditioned upon an authoritative determination of the question of coverage elsewhere than in these proceedings. It has specifically reserved the right to reassert the defense when and if in its judgment the uncertainties of the law render probable the merits of its contentions. This is the second time coverage of this company's employees has been before this court. Each time the decision has gone against the company, and there is no assurance that it will not again seek to litigate the same question. Indeed, the way is open unless the matter is adjudicated here. A compliance thus burdened with conditions and uncertainties gives the appellee an advantage which equity cannot sanction nor permit to stand. In these circumstances and upon these facts, we are of the opinion that the trial court should have not only adjudicated the question of coverage in favor of the Administrator, but that it should have restrained future violations of the Act in respect thereto.

The judgment is reversed and the cause remanded with instructions to proceed accordingly.