**TOBIN, Secretary of Labor, v.**
**FLIPPO et al.**
Civ. A. No. 1052.

United States District Court
E. D. Virginia, Richmond Division.
June 6, 1950.

William S. Tyson and John J. Babe, Washington, D. C., Beverley R. Worrell, Birmingham, Ala., D. Lacy McBryde, Raleigh, N. C., and James B. Leist, Washington, D. C., for plaintiff.

Thomas H. Blanton, Bowling Green, Va., and George E. Haw, Richmond, Va., for defendants.

HUTCHESON, Chief Judge.

This is a suit brought by the Secretary of Labor against T. Frank Flippo, and others, individually and as partners, seeking to enjoin the defendants from violating the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and specifically that portion prohibiting the employment in industry of minors under sixteen years of age.

1. The defendants are engaged in the manufacture of excelsior at Doswell, Virginia. The present management of the concern consists of T. Frank and F. Carter Flippo, who have been connected with the business since 1944, although their father had established and operated the business previously.

2. From May 16 to May 19, 1949, an investigator of the Wage and Hour Division of the Department of Labor, while at the plant discovered four boys under the age of sixteen years engaged in what is known as log peeling. That term is used to describe the employment of one who removes the bark from the logs or billets used in the manufacture of excelsior. This operation is performed by hand with the use of an implement known as a drawknife. Prior to the time referred to this work had been considered by the defendants as that of an independent contractor. The logs are brought to the mill yard to be peeled, after which they are assembled in pens. A pen is six feet high and five pens constitute a cord. The occupation of the peeling is a casual one since there is not a constant supply of logs on hand. When a supply of logs is received the management lets that fact be known in the community and persons desirous of employment proceed to work, stacking the logs in pens as they are cleared of bark. The workers are paid on Friday when the wood is counted at so much per pen.

3. Upon occasion a father or other older person brought with him to assist in the operation his minor son or some other boy under the age of sixteen, but the Flippos regarded their contract or agreement to perform the work as being with the various men who responded to the call for help, although they were aware of the fact that at times they were assisted by minors and took no steps to prevent minors from work-

ing, although they were not specifically employed by the Flippos.

4. The investigator of the Wage and Hour Division returned to the plant on May 24, at which time there was a discussion with T. Carter Flippo, in which he was informed that such employment of minors constituted a violation of the Fair Labor Standards Act.

5. Neither of the Flippos were aware of an investigation of the plant in August 1940 and no such investigation was shown in the evidence, although upon cross-examination questions were propounded indicating that such an investigation had been made.

6. Promptly after the visit of the investigator on May 24, 1949, the defendants temporarily discontinued peeling logs and issued instructions to the employees and log peelers that no person under twenty years of age could be employed or enter upon the premises. When they next resumed peeling operations they continued to pay on piece-work basis but have kept the hours of the workmen in order to insure that the various individuals were paid the minimum wage on a work-day basis. They also continued the policy of employing no one under twenty years of age. After the visit of the investigator on May 24 no further communication of any kind was received from the Department until the present suit was instituted.

7. In permitting or suffering minors to work as log peelers the defendants violated the Act.

8. The defendants have discontinued violating the Act and in good faith are endeavoring to comply with its terms.

### Conclusions of Law

I have examined the memorandum filed by counsel for the plaintiff and have examined the cases cited in support of his contention that an injunction should be granted.

As indicated at the hearing, it is my view that a mere showing of a violation of the Act is not sufficient to justify the issuance of an injunction. Upon the contrary, an injunction should be issued

for the purpose of stopping existing violations or of preventing future violations. If no existing violations are shown, facts must be shown to indicate a reasonable probability that violations will occur in the future.

As I understand the opinion in Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, the Court specifically held that proof of a violation does not make the granting of an injunction mandatory but it is discretionary with the trial court.

In Lenroot v. Interstate Bakeries Corp., 8 Cir., 146 F.2d 325, also cited by the plaintiff, it appears that violations continued after the suit had been filed and the Court stated that there is nothing in the record to justify the hope or expectation that violations would not continue. The Court makes reference to clear proof of continued and repeated violations and the absence of proof of changes in operation.

In McComb v. Homeworkers' Handicraft Cooperative, 4 Cir., 176 F.2d 633, 641, in directing an injunction against certain defendants, the United States Court of Appeals, speaking through Judge Parker, said: "It (an injunction) would be granted against Chase also, but for the fact that the District Judge dismissed the suit as to that corporation on the ground that it had ceased the practices complained of, had not engaged in them for nearly a year and had no intention of doing so in the future. Under these circumstances it was clearly within the judge's discretion to deny the injunction and dismiss the suit as to Chase, and there is nothing to indicate that the discretion was abused." (Citing cases.)

And further: "The case is entirely different from that presented in Walling v. Haile Gold Mines, Inc., 4 Cir., 136 F.2d 102, where there was admitted likelihood of defendant renewing operations in violation of the act." See also Walling v. Shenandoah-Dives Mining Company, 10 Cir., 134 F.2d 395.

The case of Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 1475, 91 L.Ed. 1772, involved a question as to whether boners of meat, working in a

slaughter house, were employees of the slaughter house. While the suit sought an injunction, the only question before the Supreme Court was the one stated. In fact, the Court used the following language: "We pass only upon the question of whether the boners were employees of the operators of the Kansas plant under the Fair Labor Standards Act."

It is true the Court proceeded to indicate that an injunction might be issued, but that case, as well as the Homeworkers' Handicraft case, can be considered as determining only the status of employees as independent contractors.

Finally, in Lenroot v. Kemp, 5 Cir., 153 F.2d 153, it is to be observed that in October 1940 a representative of the Department explained the provisions of the Act to the defendants and provided them with copies of the Act and of the explanatory release. In June 1941 a violation was disclosed by an inspection, of which the defendants were notified in December 1941. In March 1942 defendants promised to comply with the Act but in June a violation was discovered. Again in June 1943 flagrant violations were found and there was testimony to the effect that other violations were committed in 1944. The facts of that case are quite different from those in the case before the Court.

 In urging that an injunction should be granted, considerable emphasis is placed upon the fact that the defendants insisted at the time of the investigator's visit that the employees were independent contractors. In support of the contention that violations may be repeated, reference is made to the fact that in their testimony the defendants insisted that this has been their view of the matter and their contention is referred to as "obstinacy". But it is to be recalled that there is no denial of their testimony to the effect that immediately after the investigation and before institution of this suit they adopted a policy of employing no one under twenty years of age and that they had gone so far as to issue instructions that no person under twenty years of age should come upon their premises. This arbitrary age limit was fixed to safeguard any possible infraction of the law. Furthermore, they have changed their method of bookkeeping in order to show the time of employment of log peelers in the same manner as the time of employment of other employees. From my observation of the defendants upon the stand I do not believe that their declared intention to comply with the Act should be ignored, but upon the contrary I accept their assurances of an intention to comply. It should not be necessary to remark that an individual should be free to come into Court for the purpose of asserting and protecting what he believes to be his rights without incurring the risk of being penalized for so doing. However, it may not be amiss to make reference to fundamental rights at times, even at the cost of seeming trite, in view of what appears to be a tendency to either forget or fail to comprehend their importance. Some of the exchanges between the defendants while on the witness stand and counsel are understandable when it is recalled that following the inspection without any further notice action was instituted. While the Act does not require any notice or warning, the facts of this case are in sharp contrast to those in the case of Lenroot v. Kemp, supra.

An order may be presented denying the application for an injunction and dismissing the complaint.