James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

HODGES CONTRACTING COMPANY and Kenneth B. Hodges, Appellees.

No. 15978.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, Stuart Rothman, Solicitor, U. S. Dept. of Labor, Sylvia S. Ellison, Paul M. Cadra, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Birmingham, Ala., for appellant.

H. H. Perry, Jr., George W. Smoak, Peacock, Perry & Walters, Albany, Ga., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

### JOHN R. BROWN, Circuit Judge.

As narrowed by the evidence, the Secretary's suit for injunction, § 17, to compel compliance by the Employer, a general contractor in Albany, Georgia, with hours of work, rates of pay and record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., concerned itself with five isolated projects out of over 1100 separate jobs. The District Judge held three out of the five covered by the act—a decision acquiesced in by the Employer who filed no appeal. As to the remaining two held not covered, the Secretary acquiesces as to one, and brings for our decision on coverage only the status of the construction of a new radio-television building for Station WALB-TV. Independent of this coverage issue, the Secretary also challenges here the Trial Court's refusal to grant injunction in the three cases held covered (and the radio-TV contract if, by reversal, we were to hold it under the Act).

The Secretary correctly recognizes that injunction, though authorized as a specific sanction under the Act, § 17, being equitable in nature, need not issue as a routine, absolute consequence of a finding of non-compliance and the existence of coverage. For the granting or denial of an injunction—and perhaps of greater importance, the delicate drafting of its terms—must inevitably be left initially to the sound discretion of the District Judge, Walling v. Florida Hardware Co., 5 Cir., 142 F.2d 444. It is he who has seen unfolded the intimate details of the controverted activity, the approach and attitude of the parties reflecting the circumstances giving rise to the controversy, the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contrition under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance and many other similar and related factors from which the Judge can determine the probability of future compliance or violations.

Where these have been properly evaluated, the action of the Trial Court, whether granting[1] or denying[2] an in-

---

[1]. Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, affirmed Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Castle v. Walling, 5 Cir., 153 F.2d 923; Walling v. Rockton & Rion R.R., D.C.W.D.S.C., 54 F.Supp. 342, affirmed 4 Cir., 146 F. 2d 111, certiorari denied 324 U.S. 880, 65 S.Ct. 1026, 89 L.Ed. 1431; see also, Walling v. Peavy-Wilson Lumber Co., Inc., D.C.W.D.La., 49 F.Supp. 846.

[2]. Walling v. Nashville C. & St. Louis Ry., 330 U.S. 158, 67 S.Ct. 644, 91 L.Ed. 816;

Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Walling v. Florida Hardware Co., 5 Cir., 142 F.2d 444; Tilbury v. Rogers, D.C.W.D.La., 123 F.Supp. 109, affirmed Tilbury v. Mitchell, 5 Cir., 220 F.2d 757, certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748; Mitchell v. Hertzke, 10 Cir., 234 F.2d 183; Walling v. Clinchfield Coal Corp., D.C.W.D. Va., 64 F.Supp. 347, affirmed 4 Cir., 159 F.2d 395; see also, District Court cases Walling v. Associated Truck Lines,

junction, will be sustained. But where this has not been the case, reviewing courts have not been slow to act by ordering [3] the issuance of injunction.

We certainly see neither disregard nor misapplication of these subtle, delicate yet profound standards by this careful District Judge.

There was, first, the acknowledged fact that, as a general contractor doing miscellaneous construction work, coverage for this Employer was a shifting thing dependent upon the nature of the jobs being performed. Despite a lengthy investigation, analysis revealed that in the two-year period and out of over 1100 contract jobs, only five were questioned.[4] Out of payrolls totaling in excess of $300,000 for this period, only small amounts of disputed overtime [5] were involved.

■ And admittedly, the record-keeping deficiencies were almost trivial—failure to indicate residence addresses of transitory day laborers and to list the occupation of some employees, many of whom were Jack-of-all-trades. In addition, the Employer had taken tangible steps to establish a procedure under the direct supervision of a Labor Counselor, a former Wage & Hour Investigator, acknowledged by all to be a competent, reputable, professional expert [6] to make periodic regular checks of payrolls, study of contemporary jobs to issue the necessary instructions for payment of additional wages or overtime where indicated, the marking of payroll records by suitable stamps for covered contracts, and the like.

■ If, as the Secretary's brief states, "The controlling factor is the probability

W.D.Mich., 57 F.Supp. 943; Walling v. Woodruff, M.D.Ga., 49 F.Supp. 52; Tobin v. Flippo, E.D.Va., 91 F.Supp. 302.

3. Lenroot v. Kemp, 5 Cir., 153 F.2d 153, 156, stands as a sharp reminder that there must be genuine substance, measured in the light of the employer's prior practices and attitudes, before a District Judge can transmute his personal "belief" of compliance into a justification refusing injunction. We reversed the District Court's denial of injunction in the face of repeated violations over several years despite continued warnings, since " * * * The law books abound in cases of law-violation by outstanding citizens, reputed by men generally (including judges) to be law-abiding * * *" and " * * * Lip service to a law, with a background of violations, does not guarantee future compliance."
Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308, 310, an employer's agreement to pay disputed wages " 'until it is authoritatively determined' " that the workers were not covered following the second unsuccessful litigation of coverage question did not justify denial of injunction for, "A compliance thus burdened with conditions and uncertainties gives the appellee an advantage which equity cannot sanction nor permit to stand."
Walling v. Rutherford Food Corp., 10 Cir., 156 F.2d 513, affirmed and modified in part (other grounds), 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; McComb v. Wyandotte Furniture Co., 8 Cir., 169

F.2d 766; Walling v. National Ice & Fuel Corp., 7 Cir., 158 F.2d 28; Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29.

4. Actually, consideration of the whole record below emphasizes that, except for the radio-TV station, the Employer's position there was not a do-or-die defense of non-coverage, but was primarily to demonstrate that injunction was not needed and should not issue.

5. Coats & Clark Thread Co.

| | |
|---|---|
| Saw Mill | $ 267.18 |
| Karagheusian Original Addition | 167.65 |
| Karagheusian North Wing | 592.00 |
| Karagheusian Dye House | 99.10 |
| Radio-TV Station | 328.44 |
| Total | $1,454.37 |

6. The Secretary, while conceding professional integrity and competence, attacks upon the Labor Counselor since, at least in part, his opinion given to the client on the coverage status of these jobs was declared wrong in three out of five. In the penumbra of "new" construction, this may be demanding a prescience exceeding that of Justices Frankfurter and Minton and the First, Second, Third, Fifth, Sixth, Eighth and Tenth Circuits; see dissent Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; and see Reed v. Murphy, 5 Cir., 232 F.2d 668, 677, certiorari denied Murphey v. Reed, 77 S.Ct. 45.

or improbability of further violations," the District Judge had ample grounds for concluding that an injunction was not needed. While the law must be obeyed and faithfully executed, N. L. R. B. v. McGahey, 5 Cir., 233 F.2d 406, the issuance of an injunction, especially in broad terms, can subject an employer to substantial disadvantages, without, at the same time, giving the enforcement agency any real substantial benefit. This flows from the fact that an injunction concerning construction work could at most speak only in terms of "situations substantially similar" to the specified jobs which have long since been completed. If the facts of a new suspected project are indeed identical, relief against an employer once determined to have violated the Act would present no real difficulty. And if, as is more likely, there would be innumerable variables, the right to challenge substantial questions of coverage ought to be freely open to good faith litigation by an employer unfettered, in that process, by the prospect of contempt proceedings, cf. Cone Brothers Contracting Company v. N. L. R. B., 5 Cir., 235 F.2d 37, 41.

Denial of the injunction had substantial basis and is affirmed.

■ But the Court was, we think, in error in denying coverage for the radio-TV building. A local newspaper owned and had long operated Radio Station WALB under a license from the Federal Communications Commission. It had applied for and received a television license. To house both the radio and television station, the Employer here had contracted to construct for WALB-TV a building at a cost of approximately $70,000.-00. It was at a site exceeding a mile from the old radio station. Construction began in February 1954. While work was still under way, the TV Station commenced operations in it in April 1954 continuing them down through completion of construction in September 1954. The radio station equipment was not moved into the new building until January 1955, and its operations in the meantime continued at the old site.

Proceeding from the conviction that the intended ultimate use of this new building for the *radio* station was purely incidental, and that the building was therefore being constructed for an entirely new interstate communication facility (the TV Station), the District Judge held that this was "new" construction beyond the coverage of the Act initially and which, adopting the Second Circuit's rule, Scholl v. McWilliams Dredging Co., 169 F.2d 729, did not change (until final completion) merely by interim use from April to September.

This approach was too narrow. Even if (and the if is a big one) the Trial Court, with no traditional record evidence as a basis for it, could conclude that television foredoomed radio,[7] it was undisputed that the building was to serve both radio and television. And so long as the radio broadcasting was, and would be, a distinct activity of interstate "commerce," it no more mattered that, in relation to future television, it was, or would be, of slight importance, than does the predominant local intrastate business of an employer remove him from the Act as to those employees whose activities are interstate[8] in nature.

---

7. To offset the District Judge's comment that, "The Court cannot close its eyes to the great advances in the field of television and must conclude that this construction was not undertaken to expand, replace or improve the radio operation, but, to the contrary, may be the first step in the elimination of that type of facility of commerce.", the Secretary with ready access to the mountainous storehouse of Washington Bureaucratic information asserts, by brief, that of 445 TV Stations on the air in 1956, over 76% were operated by companies owning and operating radio stations; and, that, so unwilling to concede death from TV is the radio industry, that stations numbering 2,006 in 1949 have increased by 1955 to 2,732 to produce a cacophonous millennium in which "American homes now have more radios than bathtubs, running water, or refrigerators."

8. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460;

This removed it then from any status of naked "new" construction for an activity not yet in being for while one (television) might be deemed a new activity, the radio broadcasting had long been carried on. For the radio station, the new building was therefore an improvement[9] of an existing facility—an operating radio station—and hence, in any vintage, was within the Act. And Mitchell v. C. W. Vollmer & Co., supra, decided subsequent to the Trial Court's action, made it doubly sure.

Independent of the proposed ultimate use for both radio and television, the Secretary insists that giving due voice to the "practical considerations" again emphasized by Mitchell v. C. W. Vollmer & Co. supra, as the gauge, construction of a new building for a new television station (unconnected with a going radio station) not yet in operation would nevertheless be commerce. This seems to rest primarily on two things. First, the specialized nature of the radio-television industry, the necessity[10] for prior application and grant of a license by the Federal Communications Commission and the making of conditional outlet contracts with nationwide networks before construction can ever begin which makes it certain that the facility will not be a local, intrastate activity. And second, the physical fact that, as to the dissemination of program material into the reception area of the proposed new station, it is merely the expansion and improvement of the *existing* facilities (see note 9, supra) of the large nationwide network chains.

We think it inappropriate to anticipate this especially on a record which only in the vaguest way hints at what we as TV devotees or victims (and not as Judges) know or think we know.

While the action denying coverage as to the radio-TV building contract is erroneous and must be reversed, the matter must be remanded to the District Court for further and not inconsistent proceedings in accordance with applicable principles, since the District Judge did not, as to this, reach the question of the nature and extent of the relief to be granted, the necessity for an injunction, or the terms and provisions of any injunctive orders.

Affirmed in part.

Reversed and remanded in part.

Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427, certiorari denied, Stewart-Jordan Distributing Company, Inc., v. Mitchell, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136; North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172, citing with approval Schmidt v. Peoples Telephone Union of Maryville, Mo., 8 Cir., 138 F.2d 13; Foremost Dairies, Inc., v. Ivey, 5 Cir., 204 F.2d 186.

9. J. F. Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Bennett v. V. P. Loftis Co., 4 Cir., 167 F.2d 286; Tobin v. Pennington-Winter Construction Co., 10 Cir., 198 F.2d 334, certiorari denied Pennington-

Winter Const. Co. v. Durkin, 345 U.S. 915, 73 S.Ct. 727, 97 L.Ed. 1349; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334; Walling v. McCrady Construction Co., 3 Cir., 156 F.2d 932, certiorari denied 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673; Mitchell v. Chambers Construction Co., 10 Cir., 214 F.2d 515.

10. E.G., § 319(a), Communications Act of 1934, 47 U.S.C.A. § 319(a); 47 CFR 1.301; FCC Form 301, "Application for Authority to Construct a New Broadcast Station * * *"; see National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344; Allen B. Dumont Laboratories v. Carroll, 3 Cir., 184 F.2d 153.