James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

LAKEWOOD BROADCASTING SERV-
ICE, INC., a Corporation, Defendant.

Civ. A. No. C-2895.

United States District Court,
D. Colorado.

July 27, 1971.

Henry C. Mahlman and Ronald G. Whiting, Denver, Colo., for plaintiff.

Karl E. Ranous, Van Cise, Freeman, Tooley & McClearn, Denver, Colo., for defendant.

## MEMORANDUM OPINION

WINNER, District Judge.

The case is before the Court on stipulated facts, and the parties have agreed that the Court shall "decide this litigation on the basis of the facts enumerated in this stipulation without other testimony or documentary exhibits." Accordingly, the Court incorporates by reference and finds all of the stipulated facts.

In summary terms, the stipulation recites that defendant is engaged in the radio broadcasting business, and that substantial interstate commerce is involved. One James Martin was employed as an announcer from January 16, 1970, through May 18, 1970, under a written contract, and, as phrased in the stipulation, "on May 18, 1970, James Martin without cause terminated his employment with the defendant. As of that date he had received no compensation for services rendered by him to the defendant subsequent to April 30, 1970." During this employment, he was customarily paid twice monthly. Between May 1 through May 18, plaintiff worked a total of 113¼ hours, for which the parties agreed that "he would, had his

employment not terminated, have been entitled to a gross semi-monthly salary payment of $350 on May 14, 1970. On May 16, he worked eight hours which brought his total number of hours in that week to 48. He would accordingly be due eight hours at one and one-half times his contractual hourly rate of $3.-10." [An hourly rate of $2.85 is set forth in the written contract, but the parties agree that this rate had been increased to $3.10.] Taking into account certain other adjustments, "The parties agree that this sum totaling $389.20 is an accurate recapitulation of the amount of wages withheld from Mr. Martin by the defendant pursuant to the provisions of the employment agreement."

What the parties are saying in the sentence last quoted is that Martin breached his contract with defendant, and that defendant refuses to pay Martin anything for his last 18 days on the job, claiming a right of setoff against wages due him because of damages sustained by defendant as a result of Martin's breach of contract. Without enumeration here of the stipulated expenses of defendant which it seeks to charge against Martin's wages, suffice it to say that their gross amount is substantially in excess of the $389.20 earned by Martin prior to the termination of his contract.

That the case presents something more than an isolated squabble between employer and employee is shown by paragraph 10 of the stipulation:

"The defendant routinely uses contracts substantially identical except with respect to dates and salary amounts with respect to a number of its employees. The defendant has been requested by representatives of the plaintiff to refrain from withholding compensation due any employee under the provisions of such employment contracts. Defendant believes its contract form to be valid and enforceable and has refused to give such assurances and has on the contrary stated its explicit intention to contin-ue to use such contracts in such form and where it deems such action appropriate to make such withholdings of compensation due as it deems appropriate with respect to any employees who may terminate their employment prior to the expiration of their employment agreement in the future."

The issues as phrased by the parties appear in paragraph 12 of the stipulation:

"The parties agree that the issues of law other than those implicit in the factual matter concerning which there is no dispute are as follows:

"a. Under the facts recited above, does the defendant's refusal to compensate employee Martin in any amount for a period of time in which he worked a regular 48-hour workweek constitute a violation of the overtime provisions of the Fair Labor Standards Act (29 U.S.C. § 207)?

"b. Under the facts recited above, does the failure or refusal of the defendant to compensate employee Martin in any amount for hours of work during workweeks when he worked less than 40 hours constitute a violation of the minimum wage provisions of the Act (29 U.S.C. § 206)?

"c. Under what circumstances, if any, may the defendant in its contracts with its employees withhold payment of wages due such employees pursuant to the provisions of sections 6 or 7 of the Fair Labor Standards Act?

"d. If the defendant's practices are determined to be violative of either section 6 or 7 of the Act, is plaintiff entitled to an injunction restraining such practices by the defendant in the future? Secondly, is plaintiff entitled to an order compelling the defendant to pay plaintiff on behalf of employee Martin the amount of unpaid wages resulting from such violations in May, 1970?"

The problem is more succinctly stated in the briefs, but the parties phrase it differently. Plaintiff says the issue is:

"The basic question raised on the facts before the Court is whether the defendant and its employees may privately agree that in certain circumstances as spelled out in such contracts the employee shall be paid less than the minimum wage required by section 6 of the Act or less than the overtime compensation required by section 7 of the Act."

Defendant, on the other hand, says the issue is that "The Department here seeks a ruling that the minimum wage provisions of the Act abrogate an employer's right of setoff against an employee and require an employer having a claim against his employee to pay wages in full and then seek independent recovery against the employee in an action at law."

Neither statement of the question seems to us to be totally correct. The question as we view it is this:

Where an employee breaches his employment contract, and where that breach proximately causes damages which, under ordinary principles of state law, could be offset against wages due the employee, can that right of setoff be utilized in a fashion which would prevent the employee from receiving the minimum wages guaranteed him by federal statute?

■ We start with the proposition that absent special statutory requirements, an employer may offset against wages due an employee any damages resulting from the employee's breach of contract. 56 C.J.S. Master and Servant § 104. But, certainly, we know that "the Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it. Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." Tennessee Coal, Iron and Railroad Company v. Muscoda Local No. 123, 321 U.S. 590, 602, 64 S.Ct. 698, 83 L.Ed.2d 949. That the requirements of the Act cannot be changed by contract was expressly held by the Tenth Circuit in Walling v. Mid-Continent Pipeline Company, 143 F.2d 308, where Judge Murrah said that employees were entitled to be compensated *in accordance with the applicable provisions of the Fair Labor Standards Act, regardless of any employment contract to the contrary.*[1]

■ The parties have cited and we have found no case squarely passing on the question of whether a right of setoff under state law can affect an employee's guarantees under the Fair Labor Standards Act. It is true, that state law ordinarily governs in determining whether a claim is one which may be made by way of setoff, recoupment or counterclaim. Tiger v. Sellers (10 Cir.) 145 F.2d 920. With this thought in mind, we look to Colorado law as to the substantive right of setoff and we find Finance Acceptance Company v. Breaux, (1966) 160 Colo. 510, 419 P.2d 955. That opinion, written by Judge McWilliams, is by analogy closer to our problem than any case cited by counsel in their briefs. There, Breaux, an employee, owed Finance Acceptance, his employer, $10,000.00. When the employment was terminated, Finance Acceptance owed Breaux $617.91 for overtime work, and it owed him $437.04 for his refundable interest in a retirement fund. Finance Acceptance sued Breaux for the $10,000.00 and Breaux counterclaimed for the $617.91 plus the $437.04. Breaux

1. In a closely related area Judge Doyle commented, "There is nothing in the statute which suggests that diminished worker compensation is to be tolerated." Salazar v. Hardin, D.C., 314 F.Supp. 1257.

took the position that 70% of the wages due him could not be offset against his $10,000.00 indebtedness for the reason that C.R.S.1963, 77–2–4 says that 70% of a person's wages are exempt from execution; and argued Breaux, if the wages are exempt from execution, they are exempt from being used as a credit against plaintiff's claim. The fact that Breaux was broke and that Finance Acceptance couldn't collect a dime from him while he was at the same time saying that he was entitled to collect the judgment for 70% of his wages caused Judge McWilliams to comment:

"But the real controversy was triggered by the fact that the defendants are insolvent and cannot satisfy the judgment rendered against them, whereas the plaintiff is solvent and fully able to satisfy the judgment rendered against it on Joseph Breaux's counterclaim. It was in this circumstance that Joseph Breaux caused the sheriff to levy on the property of the plaintiff in an effort to get satisfaction of his judgment for $869.58 rendered against plaintiff. The plaintiff takes an extremely dim view of all this and wonders, perhaps with some reason, if the law, as suggested by Dickens, really is an ass. This wonderment stems from the fact that it under the circumstances may possibly be required to pay Joseph Breaux the sum of $869.58, at a time when Joseph Breaux and his wife admittedly owe it a sum in excess of $9,000, and are unable to pay the same or any part thereof."

Without either concurrence with or dissent from Dickens' suggestion, the Colorado Court held that the statutory exception from levy applied to setoffs and counterclaims. In *Finance Acceptance*, the Court adopted as Colorado law this statement from 22 Am.Jur. p. 108:

"Creditors very often attempt to defeat a claim of exemption by interposing a setoff or counterclaim existing in their favor and against the debtor. Most frequently this is done in actions by the debtor for wages or compensation. The general rule seems to be that in such case the right to exemption will be respected and protected without regard to the right of offset and that the creditor will not be permitted to defeat the exemption by setting up a demand against the debtor's claim, even though such demand would otherwise be good as a counterclaim or setoff."

Thus, under *Finance Acceptance*, the state created guarantee of receipt of seventy percent of a person's wages is immune from a right of setoff. Can it be said logically that the federally created guarantee of payment of minimum wages is any less immune from setoff? We think not. To hold that the mandate of the Fair Labor Standards Act could be this easily frustrated would be to ignore the compelling public policy underlying the statute.

We hold that the minimum wages due Martin under the Fair Labor Standards Act are immune from defendant's claim of setoff, but this is not to say that defendant could not offset and leave for litigation between Martin and defendant any amount claimed to be due Martin in excess of the guaranteed minimum wage. By way of analogy, we refer once again to *Finance Acceptance*. There, the Court held that 30% of Breaux's wages were subject to levy, and it will be recalled that there was an additional amount involved arising from the refund said to be due from the employee's contribution to the retirement fund. As to this amount, the Court held that "the monies due him from the voluntary retirement plan under these circumstances cannot be considered to be 'earnings.'" Therefore, said the Court, the retirement contributions were not immune from levy and were entitled to be used as a setoff.

Here, Martin has a statutory guarantee of payment of minimum wages, and, as has been said, that guarantee cannot be destroyed under a claimed right of offset. He has no such guarantee as to any wages in excess of the statutory

minimum wage, and defendant's damage claim against Martin can be partially satisfied by way of recoupment from that excess amount, albeit the substantive right to such recoupment may ultimately have to be decided in a lawsuit between Martin and defendant.

Here, of course, we do not have Martin before us, and the stipulation on which this case is decided does not represent his agreement. We are called upon to decide only the issues between the Secretary of Labor and defendant, and we decide no more than those issues. As to such issues, we hold that the minimum wages due Martin under the Fair Labor Standards Act must be paid to him, and no setoff or right of recoupment which defendant may have against Martin can be charged against the statutory minimum wages due him. In other words, in accordance with the stipulated facts, Martin worked 113¼ hours for which he was guaranteed $1.60 per hour, and he worked 8 hours at guaranteed time and one-half of $2.40. The statutry minimum wages for this work is $187.60, and the Court orders the restraint of any withholding of payment of this amount to Martin, together with interest thereon from the date such payment became due.[2]

■ Plaintiff additionally seeks sweeping injunctive relief "enjoining and restraining defendant, its officers, agents, servants, employees, and all persons acting or claiming to act in its behalf and interest from violating the provisions of sections 15(a) (2) and 15(a) (5) of the Act." This request is denied. It is apparent that this is a good faith dispute between plaintiff and defendant, and there is no need for such broad injunctive relief.

The relief granted is limited to that set forth in the paragraph immediately preceding, and it is ordered that each party shall pay his and its own costs.

---

2. It is to be noted that the $187.60 is not in agreement with the arithmetic adopted by either party in the briefs, but the Court believes that it is in agreement with the stipulated facts.