In the Matter of NEW YORK TITLE AND MORTGAGE COMPANY (2–8 West 46th Street, Manhattan). (Series N-103). ▮

Supreme Court, Additional Special Term, New York County, February 5, 1943.

*David Vorhaus* and *Sidney Greenman* for Herbert A. Wolff, as trustee.

McLaughlin, J. This is an *ex parte* application by the trustee of this issue, who is the fee owner of the premises 2-8 West 46th Street, New York City, for an order authorizing him to pay back wages amounting to about $4,750 to employees and former employees of this building, representing overtime wages claimed to be due them under the provisions of the Fair Labor Standards Act of 1938. (U. S. Code, tit. 29, § 201 *et seq.*)

The application was referred to Honorable Jacob Marks, Official Referee, to take testimony and report as to the merits of the said application. A hearing on said application was duly held before the official referee, testimony was taken, and the official referee has filed his report in which he recommends that the application be denied.

From the papers submitted on this application and from the testimony taken before the official referee it appears that the pertinent facts in this application may be summarized as follows:

The building at 2-8 West 46th street, New York City, is a seventeen-story office and loft building, located 100 feet west of Fifth avenue in New York City. The ground floor in the said building is now vacant but for the greater part of the period from 1938 to date was leased by the trustee to a tenant who occupied it as a restaurant. The upper floors are divided into offices, salesrooms, studios and lofts with suites arranged for occupancy by some seventy different tenants. At the present time fifty-seven of these suites are leased by the trustee to various tenants and thirteen are vacant. These tenants are engaged in diversified lines of business, some of them being commercial photographers, custom tailors, dealers and jobbers in diamonds and jewelry, a storage company, a wholesale woolen house, an advertising concern, a concern supplying products to beauty shops, and a photographic laboratory. A recent survey was made by the managing agent of the building to determine what percentage of the tenants is engaged in interstate com-

merce and what percentage of said tenants is engaged in the production of goods for commerce on the premises. It is conceded that this survey is representative of the condition that existed in the building from 1938 to date. The survey shows that fifty per cent of the tenants, occupying about fifty-seven per cent of the total floor area of the building, are engaged in interstate commerce, but that only three tenants, occupying less than ten per cent of the total floor area of the building, actually are engaged in the production of goods for commerce on the premises. The survey does not show what percentage of the business of these tenants is interstate or intrastate, or what percentage of the goods produced on the premises goes into interstate commerce. The three tenants who are engaged in the production of goods for commerce on the premises consist of (1) a commercial photographer who produces certain photographic work on the premises and ships some part of it to clients in other States; (2) an advertising agency which produces advertising ideas and copy on the premises and ships some part of it to clients in other States; and (3) a photographic laboratory which develops and prints photographic work on the premises and ships some part of the finished work to clients in other States. The employees and former employees who are claiming the back wages for overtime work consist of a superintendent, elevator starter, elevator operators, firemen, watchmen, porters and handymen. There is no dispute as to the number of hours these employees or former employees worked nor is there any dispute as to the amount of wages claimed, if these employees are covered by the provisions of the Fair Labor Standards Act.

Prior to the recent decisions of the Supreme Court of the United States, hereinafter referred to, the courts of this State had held that employees of the owner of a building, whose duties were confined to the operation and maintenance of said building, did not come within the coverage of the Fair Labor Standards Act, even though the tenants of the building were engaged in interstate commerce or in the production of goods for commerce. (*Killingbeck* v. *Garment Center Capitol, Inc.*, 259 App. Div. 691, leave to appeal to the Court of Appeals denied, 284 N. Y. 818.)

On June 1, 1942, the Supreme Court of the United States handed down its decisions in the cases of *Kirschbaum Co.* v. *Walling* (316 U. S. 517). In these cases the Supreme Court held that the employees of the owners of loft buildings, such as elevator operators, firemen, engineers, porters, carpenters

and carpenters' helpers, came within the coverage of the Act, *where the tenants of the building were principally engaged in the production of goods for commerce.*

On January 18, 1943, the Supreme Court of the United States handed down its decisions in the cases of *Walling* v. *Jacksonville Paper Co.* (317 U. S. 564) and *Higgins* v. *Carr Bros. Co.* (317 U. S. 572).

Before discussing these decisions of the Supreme Court of the United States, a comprehension of the pertinent provisions of the Act is essential to the proper interpretation of said decisions.

The Fair Labor Standards Act of 1938 provides under subdivision (a) of section 206 of title 29 of the United States Code that " every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce " prescribed minimum wages, and under subdivision (a) of section 207, overtime compensation must be given " any of his employees who is engaged in commerce or in the production of goods for commerce " where said employee works longer than the maximum hours prescribed in said Act.

Subdivision (b) of section 203 of title 29 of the United States Code defines commerce in these words: " ' Commerce ' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." Subdivision (j) of section 203 provides as follows: " for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

It will be noted that the scope of the Act includes two classes of employees; those engaged in commerce, and those engaged in the production of goods for commerce. The Act, by its terms, restricts the first class of employees to those employees actually engaged in commerce, but on the other hand does not limit the second class to those who participate in the physical process of the making of the goods but extends its coverage to employees engaged " in any process or occupation necessary to the production."

Having in mind this concept of the provisions of the Act, a reading of the opinion of the court in *Kirschbaum Co.* v. *Walling* (*supra*), discloses that the court based its decision on the finding that the employees, in the loft buildings involved, were

included in the second class of employees referred to in said Act, namely employees " engaged in the production of goods for commerce."

The reasoning of the court in those cases seems to be as follows: The tenants in the buildings were principally engaged in the production of goods for commerce. Without light, heat and power the tenants could not engage, as they did, in the production of goods for interstate commerce. The maintenance of a safe, habitable building was indispensable for that activity. The work of the employees in those cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation necessary to the production of goods for commerce.

In the case at bar, however, only three of the fifty-seven tenants in the building, occupying less than ten per cent of the total floor area of the building, are engaged in the production of goods for commerce. The ruling in the case of *Kirschbaum Co.* v. *Walling* (*supra*), is, therefore, not decisive of this case.

The question left unanswered in the case of *Kirschbaum Co.* v. *Walling* (*supra*), and the one which the court must decide in this case is — what portion or percentage of an employee's activities must be related to the production of goods for commerce in order to bring that employee within the coverage of the Act?

In the case of *Walling* v. *Jacksonville Paper Co.* (*supra*), where the question considered by the court was whether certain employees of the respondent were " engaged in commerce," the court said (at p. 571): " The applicability of the Act is dependent on the character of the employees' work. *Kirschbaum Co.* v. *Walling, supra,* p. 524. *If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act.*" (Italics supplied.)

The rule seems to be, therefore, that if a substantial part of an employee's activities is related to " commerce " or the " production of goods for commerce," he is covered by the Act.

This court finds from the allegations contained in the moving papers and from all the evidence before the official referee that that part of the employees' activities which is related to the production of goods for commerce, in this case, is not substantial, but is minor and insignificant.

The court is of the opinion, therefore, that these employees do not come within the scope of the Fair Labor Standards Act.

Counsel for the trustee argues that, inasmuch as fifty per cent of the tenants in the building, occupying about fifty-seven per cent of the total floor area, are engaged in interstate commerce, even though not in the production of goods for commerce, the employees of the building are covered by the Act. As pointed out, the Act, by its terms (U. S. Code, tit. 29, § 203, subd. [b]), restricts its coverage of employees '' engaged in commerce '' to those employees actually engaged in '' trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.''

In enacting the Fair Labor Standards Act Congress indicated its purpose to leave local business to the protection of the States. (*Walling* · v. *Jacksonville Paper Co., supra,* 570.) Congress did not exercise in this Act the full scope of the commerce power. (*Kirschbaum Co.* v. *Walling, supra,* 522–523; *Walling* v. *Jacksonville Paper Co., supra,* 570.) The Act does not extend to any business or other transactions which merely '' affect commerce '' but is more narrowly confined. (*Walling* v. *Jacksonville Paper Co., supra,* 571; *Higgins* v. *Carr Bros. Co., supra.*)

The ownership, operation and maintenance of a building, in which the tenants are engaged in interstate commerce, but in which none of the tenants or a small and insignificant percentage of them is engaged in the production of goods for commerce, is at most a business '' affecting commerce.'' The Act does not apply to such a business (*Cochran* v. *Florida Nat. Bldg. Corp.,* 45 F. Supp. 830).

The court holds that the number or percentage of the tenants who are engaged in interstate commerce is not important, provided that said tenants are not '' engaged in the production of goods for commerce '' on the premises.

The report of the official referee is confirmed and the application is accordingly denied.