## BOHN v. B & B ICE & COAL CO., Inc.

### No. 860.

District Court, W. D. Kentucky, Louisville Division.

Jan. 14, 1946.

J. Paul Keith and Jones, Keith & Jones, all of Louisville, Ky., for complainant.

Robert P. Hobson and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., for defendant.

MILLER, District Judge.

The complainant, George Bohn, brought this action as an employee of the defendant, B & B Ice & Coal Company, to recover unpaid wages in the amount of $2869.04, together with liquidated damages in the same amount and attorney's fee under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The defendant claims that the complainant was not engaged in interstate commerce sufficiently to bring him under the Act and in any event the evidence was not sufficient to establish the claim. The case was heard by the Court without a jury.

The defendant, B & B Ice & Coal Company, was a Kentucky corporation during the period of March 5, 1940, through February 15, 1945, which is the period under consideration in this action, doing a general ice and coal business in Louisville, Kentucky, and engaged in interstate commerce.

The complainant, George Bohn, was employed by the defendant continuously during the period herein involved. He was paid $40 per week from March 5, 1940, to April 25, 1941; then $42.50 per week from May 2, 1941, to January 5, 1943; then $45 per week from January 5, 1943, to June 9, 1944; then $48 per week from June 16, 1944, to February 15, 1945. He was employed and paid on a weekly wage regardless of the number of hours worked any particular week. He worked regularly from March 5, 1940, through June 1, 1944, seven days per week, 51 weeks of the 52 weeks in the year, receiving one week per year as vacation with pay. From the period June 1, 1944, to February 15, 1945, he worked six days per week during 51 weeks of the year, not working on Sunday of each week. During the entire period he would work on all holidays the same as on other days except on Christmas Day he would usually get the afternoon off, but seldom the whole day, and on Thanksgiving and the 4th of July he would possibly stop work an hour or two earlier than usual.

His work at the defendant's plant started at 4:00 a. m. He would work at the plant from 4:00 a. m. to 7:00 a. m. at which time he would leave and go to his home, eat his breakfast, take his child to school and spend a short period of time in social contacts. He would return to duty at the plant at 11:00 a. m. During this period from 7:00 a. m. to 11:00 a. m., in addition to the activities above enumerated, the complainant would at times receive a telephone call from one or more customers asking for information which they had not been able to obtain at the defendant's office, and he would spend part of the time running down complaints, checking on delivery routes and soliciting new business. However, the time spent in running down complaints, checking on the delivery routes and soliciting new business was not under instructions from the defendant and was not part of his required work during that period of time. In the operation of the defendant's business and from the Company's records the complainant was officially off duty during the period of 7:00 a. m. to 11:00 a. m. No report was made to the Company by the complainant of these activities and no record was kept of how much of this period the complainant devoted to furthering the interests of the defendant. The complainant's activities in soliciting new business was chiefly the result of his personal desire to produce new business so as to insure his retaining his job. He reported back to the defendant's plant at 11:00 a. m. where he remained on duty until 5:00 p. m.

The complainant's job with the defendant was superintendent of its delivery system in the City. The defendant operated ten trucks for retail deliveries of ice in the City and four or five large station trucks for heavy hauling. The complainant's specific duties were to see that the retail delivery trucks were in shape for being operated and were loaded and went out promptly on their different city routes; seeing to it that the trucks had operators, at times going and getting the operators when they failed to show up promptly or obtaining substitutes when they were unable to report for duty, and generally that deliveries were made properly; checking the truck operators when they returned from their routes and collecting for cash sales made by them; obtaining new trade on the various city routes, and general supervision over the entire city delivery system. His duties did not include any manual labor, but at times when there was a shortage of other employees the com-

plainant would voluntarily help load a delivery truck or assist in having some minor repair performed on the truck itself.

In addition to the regular city route deliveries above referred to, the defendant also iced railroad refrigerator cars and freight trucks, both cars and trucks moving in interstate commerce. The refrigerator cars of the Illinois Central Railroad Company would be brought to the plant where the ice would be crushed and poured into the ice receptacles. The icing of the Illinois Central Railroad cars would occur almost daily during warm weather, with from one to three cars at a time, and less frequently at other times of the year. In other instances such as cars operated by the Sugar Creek Creamery Company and by Armour and Company the defendant trucked the ice from the plant to the car at the creamery company's place of operations. One trucking company, Huber and Huber, would bring large cans to the defendant's plant to be filled, possibly two or three times per week, and carry the ice away in that manner. The Southern Indiana Ice & Coal Company of New Albany, Indiana, called daily at the defendant's plant in Louisville, Kentucky, for ice until defendant's available supply was insufficient to continue meeting that demand. Sales were also made at the plant to other customers who would call for and carry the ice away with them, often to destinations in States other than Kentucky. The duties of the complainant did not include supervising or participating in this icing of railroad cars and trucks or in making the sales or deliveries of ice to customers engaged in interstate commerce. On the contrary, he was instructed by the defendant's management not to participate in such activities. However, he would at times participate in them to some extent. In such instances usually when a shortage of man power created a necessity for some assistance he would assist in the icing of the refrigerator cars or trucks, in loading ice on the trucks of out-of-town customers, and in providing a driver for one of the heavy trucks engaged in transporting ice from the plant to a customer for icing purposes. No record was kept, and the evidence fails to disclose with any degree of accuracy how much of the complainant's time was given in assisting in these activities.

■ That portion of the business of the defendant which furnished ice to refrigerator railroad cars and trucks which subsequently moved in interstate commerce constituted "the production of goods for commerce" within the meaning of Section 7 of the Fair Labor Standards Act, Section 207, 29 U.S.C.A. Chapman v. Home Ice Company, 6 Cir., 136 F.2d 353; Gordon v. Paducah Ice Manufacturing Company, D.C.W.D.Ky., 41 F.Supp. 980. However, the applicability of the Act is dependent on the character of the particular employee's work rather than upon the character of the business generally, which results in that some employees may be engaged in the production of goods for commerce, while other employees, working in a different department of the same employer, will not be engaged in the production of goods for commerce. Walling v. Jacksonville Paper Company 317 U.S. 564, 571, 63 S.Ct. 332, 87 L.Ed. 460; McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538.

■ It is not necessary that an employee devote his entire working time to the production of goods for commerce in order to be entitled to the benefits of the Act. The Statute does not say what proportion of his time must be so used, and the controlling decisions do not appear as yet to have provided any exact rule. However, the Supreme Court held in Walling v. Jacksonville Paper Company, supra [317 U.S. 564, 63 S.Ct. 337], that:

"If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act."

Other decisions to the same effect and indicating that a comparatively small percentage of his entire time would be sufficient are as follows: Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331; Schmidt v. Peoples Telephone Union, 8 Cir., 138 F.2d 13; McKeown v. Southern California Freight Forwarders, D.C.S.D.Cal., 52 F.Supp. 331.

■ It seems to the Court that a rule based upon percentage alone is not a satisfactory one, and that strong consideration should also be given to the nature of the employee's participation in such production of goods for commerce, that is whether his work in that field was continuous, regular and an integral part of his every day employment, or whether it was occasional, spasmodic or casual in its nature. In the present case whatever participa-

tion the complainant had in the production of goods for commerce was at the most only a very small portion of his total working time, the percentage not being shown with any degree of accuracy, and was of an occasional, spasmodic nature and not a part of his regular, prescribed duties. Considering both its quantity and quality, I do not believe it was sufficient to bring him within the provisions of the Act as construed by the Supreme Court in Walling v. Jacksonville Paper Company, supra. See also Hill v. Jones, D.C.W.D. Ky., 59 F.Supp. 569, and cases cited on page 572.

■ Irrespective of the amount and character of complainant's participation in such work, it was not only outside of his prescribed duties but also contrary to the orders of the management. An employee can not bring himself within the provisions of the Act by an unauthorized extension of his duties into the field of interstate commerce.

■ I am also of the opinion that, in any event, the complainant's hours of work did not include the four hours between 7:00 a. m. and 11:00 a. m., when he was away from the plant. In some instances hours of work include such hours during which an employee is required to remain on or near the premises in order to be available, even though not actually working. Walling v. Sun Publishing Company, D.C., 47 F.Supp. 180, 191, affirmed 6 Cir., 140 F.2d 445, certiorari denied 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564; Travis v. Ray, D.C.W.D.Ky., 41 F.Supp. 6. But the time during which an employee is off duty and not required to remain at or near the premises, although subject to call, is not included for purposes of overtime compensation. Gordon v. Paducah Ice Mfg. Co., D.C.W.D.Ky., 41 F. Supp. 980; Thompson v. Daugherty, D.C. Md., 40 F.Supp. 279; Thompson v. Loring Oil Co., D.C.La., 50 F.Supp. 213; Bulot v. Freeport Sulphur Company, D.C.La., 45 F.Supp. 380. In addition, what portion of that period was used by the complainant for purely personal activities and what portion was voluntarily devoted to furthering the interests of the defendant is not accurately shown by the evidence and a division of the time by the Court would be largely guesswork. See Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 175; Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90, 92; Bracey v. Luray, D.C.Md., 49 F.Supp. 821, 827.

The complaint will be dismissed. Counsel for defendant will prepare proper order for entry.