Charles DUKE, W. C. Tucker, and Almon
Blankenship, Plaintiffs,

v.

H. A. BIRCHFIELD, d/b/a H. A. Birch-
field and Sons, Defendant.

Civ. No. 5122.

United States District Court
E. D. Oklahoma.

June 27, 1963.

Joseph O. Minter, Madill, Okl., James E. Grigsby, Oklahoma City, Okl., for plaintiffs.

Thomas E. Shaw, Madill, Okl., for defendant.

DAUGHERTY, District Judge.

This is an action brought by plaintiffs, former employees of the defendant, for an alleged violation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Specifically, plaintiffs claim a violation of 29 U.S.C.A. § 207 pertaining to compensation for overtime worked in excess of forty hours per workweek. The applicable section of the Fair Labor Standards Act dealing with overtime compensation is 29 U.S.C.A. § 207. Section 207 (a) provides in substance that no employer shall employ any of his employees "who is engaged in commerce or in the production of goods for commerce" for a workweek longer than forty hours unless such employee receives wages equivalent to time and one-half for all hours over forty. The defendant disputes the amount of hours claimed worked by the plaintiffs but admits that each plaintiff worked in excess of forty hours each week employed and that each was not paid one and one-half times the regular rate of pay for each hour worked in excess of forty per week as provided by 29 U.S.C.A. § 207. Essentially the defendant disputes the applicability of the Fair Labor Standards Act, hereinafter referred to as the Act, to the employment of the plaintiffs. The determination of this primary issue will, as reflected later in this opinion, make determination of other controverted issues of fact and law unnecessary.

Plaintiffs allege the applicability of the Act based upon the premise that each of them while in the employ of the defendant was engaged in commerce and the production of goods for commerce. The defendant denies his business is such that he is engaged in commerce or the production of goods for commerce or that any of the plaintiffs in performance of their respective duties was engaged in commerce or the production of goods for commerce.

From the evidence introduced by all the parties in the trial of the case to the Court without a jury and based upon the applicable law the Court finds that the plaintiffs were not engaged in commerce

or the production of goods for commerce as defined by the Act and therefore the provisions of the Fair Labor Standards Act may not be enforced against the defendant in this action.

The defendant owns and operates a marina on the shores of Lake Texoma at a place called Catfish Bay. The buildings comprising the marina plus the boat stalls for storage and docking are situated so as to float upon the lake and are anchored to the shore by walkway ramps. The operation of the defendant's business includes retail sales of fishing supplies, tackle, etc., the rental of pleasure boats and small motors for use thereon, the storage of pleasure boats, and the furnishing for hire of craft for pleasure cruises within a limited area near the marina. For a short period of time the defendant also rented power skiis to vacationers. All supplies and goods used by the marina are delivered to the dock via land. From a practical viewpoint, and in actuality, all of the defendant's business activities are conducted upon the waters of Lake Texoma. No business activities are conducted across a state line, though no restriction is placed upon the renters of the pleasure boats as to where the boats may be taken. It is 12 to 15 nautical miles to the side of the lake where the reservoir area abutts the State of Texas.

The plaintiff's duties were coextensive with the business activities of the defendant's business operation. They made sales of fishing supplies to fishermen, made sales of gasoline and oil, rented boats and motors, rented and tended the rental boat stalls, and repaired and cleaned the boats rented and stored at the marina. On occasion the services of the plaintiffs were used as drivers on a boat cruise for vacationers, though as a general rule the defendant or his son handled this chore personally. In short, the duties and activities of the plaintiffs were in essence so closely similar as in legal contemplation to be identical and were of such a nature and variety as would be coextensive with the operation of a sport marina located in a state park area designed for sportsmen and vacationers.

There is no evidence herein to indicate a movement of goods, products or service between the States of Oklahoma and Texas which border the reservoir area. Nor does the evidence show that the defendant contemplated any aspect of his business to reach out to or into the State of Texas. There was testimony as to one charter boat trip to the "Texas side" of the lake, however, this trip was an unauthorized one and such activity was not within the prescribed authorized duty of the plaintiff, Albert Blankenship, nor the duties of the other plaintiffs. All other such charter boat trips provided by the defendant and carried out by his employees were in an area in close proximity to the Cat Fish Bay area and in no instance did they touch upon the land or waters of the State of Texas.

The plaintiffs assert that they are engaged in commerce when they rented boats and performed these other duties because in such performance they placed in movement goods and services from the State of Oklahoma to a place outside thereof, that is the Federal territory of the waters of Lake Texoma. Thus, they state that the crossing of the State-Federal boundary in their daily duties places them within the statutory definition of commerce. 29 U.S.C.A. § 203. Likewise, plaintiffs assert that the cleaning up and repairing of the pleasure boats stored and rented at the marina is such work upon and preparation of goods in interstate commerce so as to place them within the statutory definition of engaged in the production of goods for commerce.

Under the Act, the phrases "engaged in commerce" and "production of goods for commerce" are not synonymous and were deliberately chosen to delineate different fields of coverage. Rucker v. First National Bank of Miami, Okl., 10 Cir., 138 F.2d 699, certiorari denied 321 U.S. 769, 64 S.Ct. 524, 88 L.Ed. 1065.

As defined by the Act, 29 U.S.C.A. § 203(b), "commerce" means trade, commerce, transportation, transmission or

communication among the several states or between any state and any place outside thereof.

Subsection (i) of Section 203 defines goods as meaning goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer or possessor thereof.

■ Commerce, as defined by Congress for the purposes of the Act, is a broad term and the engagement in any one of the activities which are included within the statutory definition of commerce is sufficient to subject an employer to regulation under the Act. Walling v. Rockton and Rion R. R., D.C., 54 F.Supp. 342, affirmed 4 Cir., 146 F.2d 111, certiorari denied 324 U.S. 880, 65 S.Ct. 1026, 89 L.Ed. 1431.

Commerce in its simplest signification means an exchange of goods, but in the advancement of society, labor, transportation and various means of exchange become commodities and enter into commerce. In such case, the subject, the vehicle, the agent and the various operations become the objects of commercial regulation. Lenroot v. Western Union Telegraph Co., 52 F.Supp. 142, affirmed 2 Cir., 141 F.2d 400, reversed on other grounds 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414.

■ Congress did not, in the enactment of the Act, intend to exert the full measure of its commerce power but instead to leave local business to the protection of the state wherein it was located, thus requiring the observation of limitation that the courts are not free to absorb by judicial process essentially local activities which Congress in the exercise of its judgment did not see fit expressly or by fair implication to bring within the scope of the Act. E. C. Schroeder Co. v. Clifton, 10 Cir., 153 F.2d 385, certiorari denied 328 U.S. 858, 66 S.Ct. 1351, 90

L.Ed. 1629; 10 East 40th St. Bldg. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263; Walling v. Amidon, 10 Cir., 153 F.2d 159; Rucker v. First National Bank of Miami, Oklahoma, ibid.; Ouendag v. Gibson, D.C., 49 F.Supp. 379; In re New York Title and Mortgage Co., 179 Misc. 789, 39 N.Y.S.2d 893; Fountain v. St. Joseph Water Co., 352 Mo. 817, 180 S.W.2d 28.

■ In determining what constitutes commerce or engaged in commerce within the meaning of the Fair Labor Standards Act, the Court should be guided by practical considerations. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. See also, Walling v. Mutual Wholesale Food and Supply Co., 8 Cir., 141 F.2d 331; Tobin v. Allstate Cost. Co., D.C., 95 F.Supp. 585, affirmed 3 Cir., 195 F.2d 577; Walling v. Paramount Richards Theaters, D.C., 61 F. Supp. 290; Abram v. San Joaquin Cotton Oil Co., D.C., 49 F.Supp. 393; Barbe v. Cummins Const. Co., 49 F.Supp. 168, affirmed 3 Cir., 138 F.2d 667.

■ An employee to be engaged in commerce within the Act must be actually engaged in the movement of commerce or the service which he performs must be so closely related to it as to be for all practical purposes a part of it. E. C. Schroeder Co. v. Clifton, ibid.

■ The applicability of the Act to any particular business depends upon the special facts pertaining to such business. To be sure the Act is remedial in nature and has a humanitarian purpose in view, thus to effectuate the desired result it should be liberally construed. McComb v. Farmers Reservoir and Irrigation Co., 10 Cir., 167 F.2d 911, affirmed 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672. But it is not every activity that in any way affects commerce and not every activity that in some way leads ultimately to the production of goods for commerce that is intended to be included within the terms of the Act. H. B. Zachary Co. v. Mitchell, 5 Cir., 262 F.2d 546, affirmed 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753.

■ Whether the act applies in any particular instance can be determined by no mathematical or rigid formula, but there must be used a common-sense accommodation of judgment. Walling v. John J. Casale, Inc., D.C., 51 F.Supp. 520.

The principle that "commerce among the states" is not a technical legal conception but a practical one drawn from the course of business is a good starting point for inquiry whether a particular business is in "commerce" within the meaning of the Act. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460.

Whether an employee is engaged in commerce or in the production of goods for commerce within the coverage of the Act depends in all cases upon all attendant facts in each case. Rucker v. First National Bank of Miami, Oklahoma, ibid.

■ The ultimate determination of the applicability of the Act and the coverage thereunder is a judicial question committed to the courts. Walling v. LaBelle S.S. Co., 6 Cir., 148 F.2d 198. The Court should always be aware, in determining whether a particular business is in "commerce" within the meaning of the Act, of the fact that Congress in enacting the Act plainly indicated its purpose to leave local business to the protection of the states. This fact cannot and should not be ignored. Walling v. Jacksonville Paper Co., Ibid.

■ The Court is of the opinion that the business under scrutiny herein and the attendant activities of the plaintiffs is of a purely local nature. There are no commercial activities which cross a state boundary and which could be characterized as interstate within the contemplation of the Act. The fact that some of the boats stored in the marina or serviced there are owned by Texas citizens and residents, or the fact that on one occasion a charter cruise ventured to the other side or "foreign" side of the lake, does not change the characterization of the commercial activities herein discussed as local and not interstate. Ships which are used as vehicles of interstate or foreign transportation are "goods for commerce" within the Act. 29 U.S.C.A. § 203(b, i). St. Johns River Ship Building Co. v. Adams, 5 Cir., 164 F.2d 1012. Such would not be the case, however, where the "ship" involved was a mere pleasure craft not used as a vehicle of interstate transportation. An employee cannot bring himself within the coverage of the Act by an unauthorized extension of his duties into the field of interstate commerce. Bohn v. B. and B. Ice and Coal Co., D.C., 63 F.Supp. 1020.

The activities of the plaintiffs in traversing as they do the area from the floating marina onto the water is not commerce from a state to a place outside thereof as outlined in the Act. The federal nature of the lake comes by way of it being navigable body of water. Davis v. United States, 9 Cir., 185 F.2d 938. The land taken to create the reservoir was condemned and taken pursuant to the commerce power of Congress, its fountainhead being Art. 1, Sec. 8, Clause 3. The Denison Dam creating Lake Texoma and the reservoir area was constructed as an exercise of the commerce power of Congress and the primary purpose of such dam and lake was flood control. State of Oklahoma ex rel. Phillips v. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487. The land now covered by water did not at the time the lake was being formed nor does it now outline the outer limits of the land over which the United States acquired ownership and jurisdiction by condemnation for the construction of this reservoir area. The land taken to create the Denison Dam and reservoir area was taken in fee by the United States but its outer limits extend well above the shore lines of the lake. See plaintiffs' Exhibit No. 2. Pursuant to Section 4 of the Flood Control Act of 1946, the Department of the Army, under whose authority the reservoir area is operated, is authorized to make lands within reservoir areas available for public park and recreational facilities. Act of December, 22, 1944, Section 4, as amended by Act of July 24, 1946 (60 Stat. 641; 16 U.S.C.A. § 460d. That was accomplished in this

case by a lease for recreational purposes made in favor of the State of Oklahoma by and through the Oklahoma Planning and Resources Board. The building, maintenance and operation of a marina, as is owned and operated by the defendant herein, was within the contemplation of that lease and was so provided for. The defendant operates the marina under an assignment of a lease given for the express purpose of operating this marina, given by the Oklahoma Planning and Resources Board.

The area where the defendant operates is physically within the acreage taken in fee by the United States and is attached by a walkway to this land subsequently leased by the State of Oklahoma from the United States. Another parcel amounting to 7.54 acres has been deeded in fee to the State of Oklahoma but it is not involved herein. An example of the overriding purpose and a graphic illustration of the ultimate supremacy of the Federal authority over the reservoir area is illustrated in this quitclaim deed to approximately 7.54 acres, mentioned above, from the United States to the State of Oklahoma. This deed conveys the 7.54 acres for public park and recreational purposes only and expressly reserves to the Federal Government the perpetual right to submerge, inundate and overflow that land as may be necessary in connection with the operation and maintenance of the Denison Dam and reservoir project without liability whatsoever on the part of the Federal Government. Further, it is provided that the exercise of the rights and privileges and use of the land deeded to the State of Oklahoma shall not interfere in any manner whatsoever with the operation of the reservoir project. This overriding supremacy of the reservoir project in relation to the recreational use of the land deeded or leased to the State is the cornerstone of the documents themselves. That the State of Oklahoma did not acquire exclusive jurisdiction of the acreage leased to Oklahoma and involved herein is ob-

vious from a reading of the lease instrument. See plaintiffs' Exhibit No. 1.

Whether the consent of the State of Oklahoma to acquire the land was given by 80 O.S. §§ 1 and 2 or 80 O.S. § 8, is immaterial. In both instances the jurisdiction acquired over the land by the United States was complete and exclusive with the exception only of a reservation to the State of a concurrent jurisdiction to execute civil and criminal process thereon and to tax property and transactions thereon not otherwise exempt. Beyond these two above-mentioned fields of concurrent jurisdiction the State lost all jurisdiction over the area condemned and taken for reservoir project purposes. Thus, the lands where the defendant's business is now located lost its identity as a part of the State of Oklahoma and became Federal property upon a taking by the United States. The defendant's employees therefore are not in fact traversing a State-Federal border in the carrying out of their respective duties. The fact that this land is now under lease to the State of Oklahoma does not in and of itself operate so as to revert the land to its former status as part of the State of Oklahoma.

It is a primary consideration at the outset of such an action as this to recover under the provisions of 29 U.S.C.A. § 207, to determine whether or not the Act is applicable to the subject employee. Paramount in the consideration of the applicability of the Act is the existence of interstate or foreign commerce, defined in the Act as commerce, for such interstate or foreign commerce is necessary to the applicability of the Act. For the reasons outlined above, it is the judgment of the Court that such commerce is not present in this case. The defendant was operating on Federal land and water and therefore was not crossing a boundary between a state and any place outside of a state and therefore was not engaged in commerce within the meaning of the Act involved herein. It follows, therefore, that the provisions of the Fair Labor Stand-

ards Act applicable to interstate commerce do not apply to this purely isolated local business. Accordingly, judgment is rendered in favor of the defendant in this cause and the Complaint is dismissed.