Joseph Mack **PILKENTON**, Plaintiff,

v.

**APPALACHIAN REGIONAL HOSPITALS, INC.**, Defendant.

Patricia **WAMPLER**, Plaintiff,

v.

**APPALACHIAN REGIONAL HOSPITALS, INC.**, Defendant.

**Civ. A. Nos. 70–C–30–A, 70–C–145–A.**

United States District Court, W. D. Virginia, at Abingdon.

Dec. 30, 1971.

Carl E. McAfee, Norton, Va., for plaintiffs.

James P. Jones, Penn, Stuart & Eskridge, Abingdon, Va., J. M. Trimble, Kincaid, Wilson, Schaeffer, Trimble & Hembree, Lexington, Ky., for defendants.

## OPINION

WIDENER, Chief Judge.

Plaintiffs seek recovery for overtime compensation under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.[1]  They contend that they are entitled to compensation for all time spent on standby shifts, during which, though not required to remain on their employer's premises, they were subject to being called to their employer's premises, expected to arrive there within twenty minutes of a call, and were required to leave with their employer telephone numbers where they could be reached or where others could reach them.  Plaintiffs submit that this time is compensable as overtime when it is considered in conjunction with their regular shifts of work.[2]  The employer readily admits that time actually spent on calls is compensable.  Its position is that the remainder of such standby time is not employment within the meaning of the Act.  Defendant also contends that, even if all of the on-call time is work, it is afforded a defense by 29 U. S.C. § 259 of the Portal-to-Portal Act, which, among other things, excuses an employer's failure to pay overtime on proof that he relied on in good faith, in conformity with, a written administra-

---

1. By amendment effective February 1, 1967, *hospitals were made subject to the* provisions of the Fair Labor Standards Act.  It is passing strange that this is, apparently, a case of first instance so far as hospitals are concerned, although the same, or substantially the same, system of standby pay is used throughout the industry.

2. No issue is made of sleeping or eating time.

tive interpretation by the Wage and Hour Division.

Jurisdiction over the case is conferred by 28 U.S.C. § 1337 and 29 U.S.C. § 216(b).

Plaintiff Pilkenton claims he is due overtime compensation at one and one-half times his regular hourly rate for fourteen and one-half hours for each week day and for twenty-four hours for each Saturday or Sunday he was on call during the period of April 1, 1968 to April 1, 1970. Plaintiff Patricia Wampler likewise seeks overtime compensation from defendant for her on-call time during the periods November 15, 1968 through August 18, 1969 and January 5, 1970 through September 11, 1970. Plaintiffs, of course, reduce their claims by the amounts they have already received for time spent on call. In their complaints, both plaintiffs also alleged that they had not received the minimum wage for their work and that they were entitled to liquidated damages. Prior to trial, both plaintiffs stipulated that they were no longer relying on these claims, leaving only the issue of allegedly unpaid overtime to be decided. By agreement of the parties, the court consolidated the actions, and the cases were heard before the court without a jury. The testimony of the witnesses was taken *ore tenus* in open court.

There was no material dispute in the evidence. Appalachian employed Pilkenton as an x-ray technologist and Mrs. Wampler as a laboratory technician at its hospital in Wise, Virginia. Both plaintiffs normally worked a regular shift of eight hours a day for five days a week. In addition to their regular work, both plaintiffs were assigned shifts of on-call duty. Such standby duty is typical in both of the plaintiffs' professions and in the hospital industry. The defendant adopted this on-call plan only to take care of emergencies in order that it could be staffed twenty four hours a day and, thus, maintain its accreditation. Both plaintiffs were informed of the standby policy before they accepted employment with the hospital.

The Monday through Friday on-call shift extended from 5:00 p. m. to 7:30 a. m., except that Mrs. Wampler's shift was changed to 10:30 p. m. to 2:00 p. m. for three months. The Saturday and Sunday shifts were for twenty four hours. During the standby time, the plaintiffs' freedom to engage in whatever activities they chose was circumscribed in two respects. First, within approximately twenty minutes of receiving a call, the employee had to report to the hospital. Secondly, each plaintiff was required to leave at the hospital a telephone number where he or she could be reached or where a message could be relayed to him or her. In all other respects, the plaintiffs' time was their own. They could go shopping, read, watch television, go to the movies, visit friends, entertain friends, travel to surrounding towns, go to restaurants, and eat and sleep at their convenience. In particular, Pilkenton testified that he had gone to ball games, visited his parents in Norton, a nearby city, four miles or so from the hospital, and that he slept very soundly during his standby time. Pilkenton, in fact, lived in Norton during a part of the time about which he complains. He recalled that most of the calls were received before his normal bedtime. Mrs. Wampler testified that during on-call duty, she had watched television, sewed, done housework, sat outside in the sun, shopped, entertained friends, courted her husband to be, and visited in towns five and ten miles away.

The hospital leased apartments to its employees; however, at no time did it require either plaintiff to live in those apartments. For at least a portion of the time complained of, both plaintiffs, because they found it convenient, resided in the hospital's apartments.

The number of calls and the length of time involved in each varied greatly. Sometimes the plaintiffs received no calls; at other times, they received several. At times, a single call involved only five minutes or so of work; at other times, a single call necessitated as much as an hour's work. The hospital's

records reveal that frequently several calls were handled in a short time span, one right after another, apparently requiring only one trip to the hospital. That is, it appears, at times, calls were equated with patients.

Generally, Mrs. Wampler worked three or four standby shifts in a two-week interval. The most time she actually spent in the hospital in a two-week period was seven hours and fifty minutes, when she had worked four standby shifts. The least time so spent was ten minutes, when she had also worked four standby shifts. The number of shifts Pilkenton worked in a two-week period usually varied from two to seven. Twelve hours was the most time he actually spent in the hospital in a two-week period, and he had then worked seven on-call shifts. One hour and forty-five minutes was the least time so spent, and he had then worked three on-call shifts.

During all the period Pilkenton complains of and during most of the period Mrs. Wampler complains of, plaintiffs were compensated for their standby duty according to the same scheme. Each received $5.00 per day Monday through Friday and $10.00 per day Saturday and Sunday, regardless of whether or not they were called to the hospital. For the first two calls, regardless of the length of time involved, no further compensation was paid above and beyond the $5.00 or $10.00. After the first two calls, each received $2.00 per call without regard to the amount of time involved per call. Subsequent to Pilkenton's departure from the hospital, a new method was devised. Although Mrs. Wampler was paid according to the new plan for four months or so, it is not materially different from the old system, except as to amount of compensation,

and, consequently, will not be described in detail.[3]

### I

Determination of plaintiffs' claims depends upon whether all time involved in their standby duty is employment under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. The Supreme Court in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944) and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L. Ed. 124 (1944) has set out certain guidelines to aid courts in making this determination. Plaintiffs, in *Armour*, employed by the defendant company as an auxiliary firefighting force, remained on call for fifteen hours after their regular work. The employees, as a condition of employment, were required to remain on the employer's premises when on standby duty. Sleeping, cooking, and amusement facilities were provided them. Their standby duties included answering fire alarms and repairing fire equipment. The lower courts ruled that the time spent sleeping and eating did not constitute employment, but that all other standby time was compensable. In affirming, the court stated in pertinent part:

"Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. *Whether time is spent predominantly for the employer's benefit or for the*

---

3. Defendant admits that, even under its view of compensable time, it is theoretically possible that plaintiffs have at times received less than they are entitled under the Act. Accordingly, it agrees to make recompense for the few, if any, instances in which plaintiffs have, in fact, not been compensated in accordance with the Act for time spent at the hospital. Such situation will be covered in the order here entered.

*employee's is a question dependent upon all the circumstances of the case." Armour,* supra, 323 U.S. 126 at 133, 65 S.Ct. 165, 168, 89 L.Ed. 118. [Emphasis added]

Further guidance was provided by *Swift,* decided the same day as *Armour.* Both cases were founded in practically identical factual situations. The employees in *Swift,* auxiliary firefighters, were assigned on-call shifts, during which they were required to remain on their employer's premises or within hailing distance thereof in readiness to answer any alarms. They were provided facilities for sleeping and for amusement. The lower courts had concluded as a matter of law that only the time actually spent in answering the fire alarms was compensable. The Supreme Court reversed, stating that each case involves a factual determination, and that the district court was " . . . apparently restricted by its notion that waiting time may not be work." *Swift,* supra, 323 U.S. 134 at 140, 65 S.Ct. 161, 164, 89 L.Ed. 124.

The court further stated:

"We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. *Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court.* Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460 [468]. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself. Living quarters may in some situations be furnished as a facility of the task and in another as a part of its compensation." *Swift,* supra, 323 U.S. 134 at 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 [Emphasis added]

Cases holding all or portions of standby time compensable have almost uniformly involved situations where the employee was required to remain on the employer's premises. *See, e.g., Armour,* supra; *Swift,* supra. Van Dyke v. Bluefield Gas Co., 210 F.2d 620 (4th Cir. 1954), cert. den. 347 U.S. 1014, 74 S.Ct. 870, 98 L.Ed. 1137; General Elec. Co. v. Porter, 208 F.2d 805 (9th Cir. 1953), cert. den. 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097, and 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115; Central Mo. Tel. Co. v. Conwell, 170 F.2d 641 (8th Cir. 1948); Kelly v. Ballard, 298 F.Supp. 1301 (S.D.Cal.1969). These cases obviously recognize that such a requirement, regardless of the amusement, sleeping and cooking facilities provided, severely limits the employee's leisure. Plaintiffs Pilkenton and Wampler were not only not requested to remain at the hospital or any particular place, they were able to spend their time largely as they chose. On the other hand, plaintiffs' on-call time was not completely unrestricted. Their activities were limited to a twenty minute radius of the hospital and they spent, roughly calculated, an average of a little more than an hour per shift working in the hospital. However, under *Armour* and *Swift,* the test is not whether an employee's leisure is curtailed at all, but rather whether it is so restricted that it is not spent primarily for the employee's benefit. Consequently, in view of all the facts and circumstances in the case at hand, the court finds as a fact that the on-call time was spent predominantly for the benefit of the plaintiffs rather than for the benefit of their employer, and that the plaintiffs were waiting to be engaged rather than engaged to be waiting.

Although no case has been cited nor found involving the same factual situation as the one under consideration, other courts have reached the same result in situations quite similar to the one at hand. Super-Cold Southwest Co. v. McBride, 124 F.2d 90 (5th Cir. 1941); Dumas v. King, 157 F.2d 463 (8th Cir. 1946); Thompson v. Loring Oil Co., 50 F.Supp. 213 (W.D.La.1943); Bohn v. B & B Ice & Coal Co., 63 F.Supp. 1020 (W.D.Ky.1946). For example, the court in *Bohn* found that the employee was not entitled to compensation for time during which he was subject to call. In addition to engaging in merely personal endeavors, such as eating and taking his children to school, he also received telephone calls from his employer's customers, investigated complaints about the operation of his employer's business, and solicited new business for his employer. In denying plaintiff's claim, the court stated:

> "But the time during which an employee is off duty and not required to remain at or near the premises, although subject to call, is not included for purposes of overtime compensation." Id. at 1023.

The plaintiffs have not cited to the court, nor has the court been able to find, any cases holding on-call time compensable except where the employees were required to remain on or in the immediate vicinity of the employer's premises or of the employee's duty station. For example, in the forty-six or so cases indexed under Labor Relations, Waiting resting, or sleeping time, ☜1287, 35 B West's Modern Federal Practice Digest, the only cases holding such standby time compensable other than where the employee remained on or very near the premises are those where the employee was required to remain in or very near a boat, car, or bus, which is at least as restrictive as, if not more so than, remaining on the employer's premises.

■ In the opinion of the court, plaintiffs are not entitled to recover overtime compensation for their on-call time because their time was spent, during such periods, predominantly for their own benefit, and not for their employer's. They were waiting to be engaged, not engaged to be waiting.

## II

Defendant contends that even if plaintiffs' time were compensable, it is afforded a defense by 29 U.S.C. § 259, which, as before mentioned, excuses an employer's failure to pay overtime on proof that it relied on in good faith in conformity with a written administrative interpretation by the Wage and Hour Division of the Department of Labor. If proved, this is a complete defense. Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4th Cir. 1969).

Following the time when the defendant came within the coverage of the Fair Labor Standards Act, its assistant comptroller, Bernam Pope, orally discussed the hospital's method of paying its employees with the chief officer of the Wage and Hour Office in Lexington, Kentucky. Pope was given a copy of Interpretative Bulletin 785, 29 C.F.R. § 785. Subsequent to the meeting, Pope wrote a memorandum for his files, concluding that the hospital employees were not entitled to compensation while on standby duty.

■ Neither the memorandum nor the oral conversation with the official from the Wage and Hour Division constitutes a defense, as neither is a written interpretation by the Wage and Hour Division.

§ 785.17 of Interpretative Bulletin 785, in its entirety, is as follows:

> "An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is *merely required to leave word at his home or with company officials*

*where he may be reached* is not working while on call. (Armour & Co. v. Wantock, 323 U.S. 126 [65 S.Ct. 165, 89 L.Ed. 118] (1944); Handler v. Thrasher, 191 F.2d 120 (C.A. 10, 1951); Walling v. Bank of Waynesboro, Georgia, 61 F.Supp. 384 (S.D. Ga.1945) )" [Emphasis supplied]

 Defendant has difficulty with two aspects of its situation with regard to the regulations, but none with the third. First, in order for an employer to assert that it relied on and conformed to an administrative bulletin, the bulletin must be specific enough to cover the particular employment situation. *Central Mo. Tel. Co.*, supra. Pilkenton and Mrs. Wampler were not "merely required to leave word . . . with company officials where [they might] be reached . . .," they also had to be able to report to the hospital on twenty minutes' notice. Secondly, the court is of opinion that an employer may not maintain that he is in good faith when he construes an administrative bulletin to exempt himself from liability, even though the bulletin itself does not specifically exempt the employer. United Biscuit Co. v. Wirtz, 123 U.S.App.D. C. 222, 359 F.2d 206 at 213–214 (1965), cert. den. 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682.

There is no doubt however, and the court finds as a fact, that both Pilkenton and Mrs. Wampler used their on-call time, while not actually in transit or at the hospital, effectively for their own purposes. This facet of defendant's position is consistent with the defense stated in Interpretative Bulletin 785, as is the undisputed fact that neither of the plaintiffs were required to remain on defendant's premises. Although such administrative determinations, while not binding upon the courts, are entitled to weight, *Swift,* 323 U.S. at 140, 65 S.Ct. 161, Bulletin 785, in the opinion of the court, is of little assistance to either party, as it does not deal with a factual situation sufficiently similar to the one under consideration.

It is therefore the opinion of the court that the defense of a good faith reliance on a writing in accordance with 29 U.S. C. § 259 and Interpretative Bulletin 785 is not well taken for the reasons above stated.

An order is this day entered consistent with this opinion.