**In re Grievance of Vermont State Employee's Association on Behalf of Hugh Brady, et al.**

[431 A.2d 474]

No. 54-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed April 24, 1981

502

*Michael R. Zimmerman*, Montpelier, for Petitioners.

*M. Jerome Diamond*, Attorney General, and *Bennett Evans Greene*, Assistant Attorney General, Montpelier, for Defendant.

**Underwood, J.** The grievants, Hugh Brady and others similarly situated, are all permanent status, full-time employees of the State of Vermont, as social workers in the Department of Social and Rehabilitation Services (the Department). One of the responsibilities of the Department is to provide around

the clock protective services in relation to child abuse, child neglect, unmanageables and delinquents.

Prior to 1979 each district office handled off-duty coverage of these responsibilities in its own way. The Department had no stated policy. In general, the solution to the problem of off-duty coverage was to use a commercial answering service for each district office. The answering service would be given a random list of all workers connected to that district office. It would then call, one at a time, each worker whose name appeared on the list until some worker was reached at his home who would agree to assume the responsibility of the incoming call.

In 1979 all workers were governed by the terms and conditions of employment set forth in the agreement between the State of Vermont and the Vermont State Employee's Association (VSEA), the bargaining representative for the workers. Article XXI of that agreement provides:

> (a) "On call" is defined as a requirement that an employee remain on or so close to either the employer's or employee's premises that he cannot use the time effectively for his own purposes.

> (b) An employee who is merely required to leave word at his home or with the appointing authority where he may be reached is not on call; however, appointing authorities in cooperation with the Department of Personnel are urged to work out alternative compensation methods, such as compensatory time off, for employees who are required to leave word where they may be reached and must be within any specific distance or time of their employer's premises.

Paragraph (b) does not mention the term "availability" when referring to an employee who is not "on call."

The Department of Personnel, working in cooperation with the Department of Social and Rehabilitation Services, first used the term "availability" when referring to the need for employees' services during off-duty hours. Unfortunately, the policy statement promulgated by the Department in April 1979 in a written document entitled "Draft Policy," while using the term "availability," did not clearly define the employees' responsibilities with respect to emergency call mat-

ters, or the conditions of expected employee availability to deal with these emergencies during off-duty hours, or the distinction between being "available" and being "on call."

The district supervisors who had to make the appointments of workers to cover off-duty hour emergencies, and the workers themselves, were confused by the policy statement. The Draft Policy did indicate that each district supervisor, with the approval of the commissioner, would designate which employee would be available each week to take the emergency calls and/or provide service responses during off-duty hours. The employee so appointed would perform those services for one full week, in addition to his regular job, "in a manner and in a time-frame considered appropriate for services rendered during duty hours." An employee so designated would not be paid in cash for time during which he was available, but would receive one compensatory day off for each full week of availability. For any hours that the available employee actually worked in responding to or performing emergency duties he would be compensated at overtime rates as established pursuant to the agreement between the State and VSEA.

The Department tried to further clarify its concept of "availability" by issuing interoffice memos and directives. In one such directive it indicated that being "available" differs from being "on call" in that the employee need only be reachable, or available, to be consulted within a reasonable period of time. He need not remain at the employer's place of business or at the employee's usual duty station, and is free to use the time for his private purposes. The only limitation imposed on the employee during his period of "availability" is that a person attempting to reach him should be able to do so in a reasonable period of time. A person "on call," however, whether at the employer's place of business, his own duty station or at home, had to remain at that designated location so as to respond immediately to work requirements.

The grievants sought overtime compensation for times when they were designated to be "available" during off-duty hours on the ground that they were in fact "on call." Their requests were denied. The VSEA appealed on their behalf to the Vermont Labor Relations Board (the Board) who dismissed the appeal. The VSEA then appealed that decision to this Court.

The question presented is whether the appellants, under the provisions of the agreement between the State and the VSEA, who were also subject to the Department's Draft Policy on "availability," were in fact "on call" and entitled to overtime compensation. In short, were the employees waiting to be engaged or engaged to wait?

The Board found that one of the grievants, who worked out of the Burlington district office, which used "beepers" instead of telephones to contact workers within a 35 mile radius of Burlington, felt it necessary to remain at her home when she was assigned duty as an "available" worker.

Another grievant, who worked out of the Rutland district office, which used the telephone to contact "available" workers, felt that this duty limited his personal time. Although he was able to attend church and go to the store for groceries, he felt that he was unable to sleep in a room away from a telephone, take a trip out of state, or go fishing on a lake near his home.

Still another grievant felt compelled to arrange her personal appointments around her periods of "availability." She rescheduled her plans so as to remain at home. On one occasion when she readied herself to attend church she received an emergency call. Rather than miss another such call she gave up attending church. As it turned out she did not receive another call that day.

The Board found that these employees were overly conscientious and were responding in a manner above and beyond the requirements of either their contract of employment or the Draft Policy.

The Board reasoned that the Draft Policy was merely an attempt by the Department to create an employee status under Article XXI(b) of the agreement between the State and VSEA and to more clearly define the differences between being "available" and being "on call." After carefully considering the terms of that agreement, the Draft Policy and the explanations issued by the Department, the Board concluded that the appellants were "available" and not "on call" because their time could be utilized primarily for their own pursuits rather than their employer's. In arriving at this conclusion the Board gave great weight to the following depart-

mental memorandum on "availability" from the personnel director dated May 9, 1979:

An employee who is "on call" is expected to respond in the same way and in the same time frame as (s)he does during normal working hours to work related matters. The employee's time *is not* his/her own. The employee is expected to have the same speed and level of response to work needs as when at work and is not free, for instance, to go shopping, to the theater or to church. Because of these limitations on the employee's ability to use his time effectively (s)he would be compensated under the provisions of Article XIV, "Overtime", Section 5(d).

The concept of "availability" differs from "on call" in that the employee must only be reachable, or "available" to be consulted in a reasonable period of time. It does suggest that there is a possibility of actually having to "work", and allows for the hours actually worked to be compensated for under the conditions specified in the rest of Article XIV, "Overtime", Article XV, "Shift Differential", and Article XVI, "Call-In Pay." During the period in which an employee is "available", (s)he is free to use the time for non-work related purposes of his/her own.

The limitation upon the employee implied by "available" is only that a person attempting to reach the employee be able to do so in a non-designated, but reasonable period of time, whereas the limitation upon the employee who is "on call" is that (s)he is required to be at a designated location, and *immediately* responsive to work requirements.

■ The Board's findings of fact must be sustained on appeal if there is any credible evidence fairly and reasonably supporting them. In short, they must be clearly erroneous for us to reverse the Board's decision based upon these findings. *In re Young*, 134 Vt. 569, 367 A.2d 665 (1976).

■ If the employee is so limited in his activities that his time cannot effectively be used as his own, then his availability is more beneficial to the employer than the employee, and he should be compensated, for he is then "on call." He is

engaged to wait. On the other hand, if the employee, while making himself available, may still carry out functions of his own and is only limited to a telephone number where he can be reached and a location from which he can respond to the call within a reasonable time, then he is not on call. He is waiting to be engaged.

Whether employees are waiting to be engaged or engaged to wait must be decided upon the facts in each case. Whether the time spent is predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case. *Armour & Co.* v. *Wantock,* 323 U.S. 126, 133 (1944); *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140 (1944).

It is impossible to lay down any legal formula to resolve the varied factual circumstances in which employment involves waiting time. It involves scrutiny and construction of the employment contract, the conduct of the parties under that contract, the nature of the service and its relation to waiting time, and all of the surrounding circumstances. The facts may show that the employee in one instance was engaged to wait and in another that he waited to be engaged. His compensation may cover both waiting and task or only performance of the task itself.

█ Cases holding that all or a portion of standby time is compensable have uniformly involved instances where the employee was required to remain on the employer's premises. The courts recognized under these circumstances that the employees' leisure time was severely limited. In the case before us not one of the grievants, or other workers similarly situated, was requested to remain at the employer's place of business, at his own duty station, or even at home. They were able to spend their time largely as they chose so long as they could be reached by telephone at a locale of a distance at which they could respond to or service the call within a reasonable time. Their activities of necessity were limited, but the employee's leisure time was not so restricted that it was spent primarily for the benefit of the employer. *Pilkenton* v. *Appalachian Regional Hospitals, Inc.,* 336 F. Supp. 334, 337–39 (W.D. Va. 1971).

In view of all the facts and circumstances in this case, the

Board's finding and conclusion that the grievants' available time was spent predominantly for their own benefit rather than for the benefit of their employer, and that they were waiting to be engaged rather than engaged to wait, is amply supported by the evidence. They are not entitled to receive overtime compensation for their being "available."

The Board's decision to dismiss the appeal must be affirmed.

*Affirmed.*